GLITTENBERG v DOUGHBOY RECREATIONAL
INDUSTRIES, INC

Docket No. 85391. Argued April 3, 1990 (Calendar No. 4). Decided
    September 28, 1990. Rehearing granted 437 Mich 1224.

David Glittenberg and Connie Glittenberg, brought an action in
    the Jackson Circuit Court against Doughboy Recreational In-
    dustries, Inc., and others, alleging failure to warn of a danger-
    ous condition existing in a pool manufactured by Doughboy.
    The court, Gordon W. Britten, J., granted summary judgment
    for the defendant. The Court of Appeals, MAHER, P.J., and
    SHEPHERD and K. TERTZAG, JJ., reversed, finding that the risk
    of serious injury involved was not obvious in the absence of
    some warning (Docket No. 98313). The defendant appeals.

    In an opinion by Justice ARCHER and an opinion by Justice
    BOYLE, joined by Justice LEVIN, with Justice CAVANAGH concur-
    ring only in the result, the Supreme Court *held:*

    The decision of the Court of Appeals is affirmed.

    Justice GRIFFIN, joined by Chief Justice RILEY and Justice
    BRICKLEY, writing for reversal, but joining with Justice BOYLE
    for remand to the trial court, stated that because a reasonably
    prudent person would recognize that a headfirst dive into
    observably shallow water carried with it the substantial risk of
    serious injury, as a matter of law, the pool manufacturer had
    no duty to warn the plaintiff of this open and obvious danger.

    A prima facie case of negligent failure to warn in a products
    liability action requires the plaintiff to demonstrate that the
    defendant manufacturer owed a duty to warn of dangers associ-
    ated with its product. The existence of such a duty is a question
    of law. A manufacturer is subject to liability for the failure to
    warn about a risk inherent in the way a product is designed
    that is related to the intended uses as well as the reasonably
    foreseeable uses of the product, but is not an insurer of the
    product and thus is not absolutely liable for any and all
    injuries sustained in its use. No product is totally accident
    proof.

    The rule that there is no duty to warn of open and obvious
    dangers has not been repudiated in Michigan, especially with
    respect to cases involving shallow dives into above-ground

pools. What is open and obvious to all reasonable persons can be objectively determined and is not dependent on the subjective knowledge of a particular user.

In this case, by virtue of the plaintiff's knowledge and swimming experience, and plain common sense, he should have known of the danger of spinal injury. The presence of a warning label on the pool would have been superfluous. It would not have deterred him or have given him any additional information. It was the plaintiff's error of judgment, not a failure to warn, that was the basis of this accident.

Justice BOYLE, joined by Justice LEVIN, stated that a manufacturer's duty to warn is not automatically excused when the risk of harm is obvious. The ultimate standard by which a manufacturer's conduct is to be measured is reasonableness. The threshold question, whether the danger of serious injury resulting from diving into shallow, above-ground pools was of sufficient magnitude that a reasonable manufacturer would have warned of it, was never answered in the trial court. The balancing of the risk inherent in a product which does not contain warnings against the utility of that product is itself an inquiry into social policy and is one for the court. In this case, the trial court did not apply the necessary balancing test to determine whether a warning was required. Rather, it based its conclusion that no duty existed solely on the obviousness of the danger.

Because the information necessary for decision is lacking in this case, it should be remanded to the trial court for a determination of whether the duty of reasonableness imposed on the defendant required warning. The parties should provide evidence which will allow an evaluation of the risk inherent in the product and its obvious or nonobvious qualities. Assuming a duty to warn, the question becomes the adequacy of the warnings originally enclosed with the pool, a question for the jury.

Justice CAVANAGH concurred only in the result.

Justice ARCHER, writing for affirmance, stated that the trial court's grant of the defendant's motion for summary judgment was improper upon the basis of the erroneous belief that the obviousness of a risk totally excuses a manufacturer's duty to warn. The obviousness of a risk is only one factor to be considered in deciding whether a manufacturer has a duty to warn of product dangers and cannot be the sole basis upon which a defective design case may be dismissed. Despite its obvious character, if a risk of danger is one not likely to be appreciated, a manufacturer still may have a duty to warn of inherent dangers associated with its product. In this case, even

if the trial court had found that the specific risk of a quadriplegic injury was obvious, this fact would not necessarily have excused the manufacturer of the duty to warn.

The defendant's failure to sufficiently warn was unreasonable in light of the magnitude of the risk of irrevocable quadriplegia which substantially outweighed the utility of the defendant's conduct. At the very least, the question should have been presented to and decided by a jury in order to fully and fairly resolve exactly what was reasonable under these particular circumstances. Likewise, the question whether the plaintiff's awareness of the general risks excused the defendant's duty to warn should have been allowed to proceed to trial.

Affirmed.

174 Mich App 321; 435 NW2d 480 (1989) affirmed.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*) for the plaintiffs.

*Kerr, Russell & Weber* (by *Robert G. Russell, Joanne Geha Swanson,* and *Janice A. Furioso*) for the defendant.

Amici Curiae:

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the Defense Trial Counsel and Michigan Defense Trial Counsel.

*Ronald R. Gilbert* for the Foundation for Spinal Cord Injury Prevention and Aquatic Injury Safety Foundation.

*Paskin, Nagi & Baxter, P.C.* (by *Jeannette A. Paskin* and *Daniel J. Seymour*), for Hartford Insurance Company and Claims Management, Inc.

*Mark Granzotto, Monica Linkner,* and *Charles P. Burbach* for the Michigan Trial Lawyers Association.

GRIFFIN, J. In this products liability case alleg-

ing negligent failure to warn, we must decide
whether the manufacturer of an above-ground
swimming pool had a duty to warn plaintiff that
serious or permanent injuries could result from a
dive into the shallow end of the pool. Because a
reasonably prudent person would recognize that a
headfirst dive into observably shallow water car-
ries with it substantial risk of serious injury, we
would find as a matter of law that the defendant
had no duty to warn plaintiff of this open and
obvious danger. Since the trial court properly
granted summary judgment for defendant, we
would reverse the decision of the Court of Appeals.

I

This lawsuit against defendant Doughboy Recre-
ational Industries, Inc., a pool manufacturer,
arises out of a diving accident which occurred in
September 1978. Plaintiff David Glittenberg, then
thirty years old, dove off the edge of his neighbor's
above-ground swimming pool into three and one-
half feet of water and struck his head on the
bottom, rendering him a quadriplegic. The details
surrounding the accident are recounted by plaintiff
in his deposition.

On the day in question, plaintiff accompanied
his ex-wife Connie Glittenberg,[1] to the home of
neighbors Robert and Dianne Wilcenski. Plaintiff
carried with him a container of beer that he had
been drinking while splitting wood at his resi-
dence. He consumed one or two additional beers at
his neighbors' house before he dove into their pool.
The shallow end of the Wilcenski pool was three
feet deep and the other end was seven feet in

_____

[1] Connie Glittenberg is also a named plaintiff in this case. However,
since her loss of consortium claim is derivative in nature, for conven-
ience sake, we use the term "plaintiff," to refer to David Glittenberg.

depth. Plaintiff testified that he had been in the pool on at least two occasions prior to the accident and had observed others in the pool at various times as well. Thus, he was familiar with the shallow end of the pool and its three-foot depth. He was able to discern where the shallow water ended and the deep water began; plaintiff acknowledged that he did not need depth markers to remind him of the water's depth.

Connie Glittenberg was basking in a floating chair in the deep end of the pool. Plaintiff attempted a "shallow" or "racing" dive into the shallow end with the intention of swimming across the pool to his wife. Tragically, he never made it.

Plaintiff testified that he did not slip or trip when making the dive. He was an experienced swimmer, having received instruction in both swimming and diving in high school and life-saving certification which qualified him to become a lifeguard. As a result of this training, plaintiff admitted in his deposition testimony that he knew serious injury could result from diving into shallow water. However, he testified that "[j]ust exactly what type of injury would result from it, I couldn't have said at the time."

No warning against diving was posted on or near the pool. Warning labels and instructions for posting the labels were provided by defendant to the original purchaser of the pool, Fred Bancroft. However, the warning labels were not placed on the pool by Mr. Bancroft or by the Wilcenskis, who purchased the pool from Bancroft.

Plaintiff sued defendant, the pool manufacturer, and others,[2] alleging in his complaint failure "to

---

[2] The Wilcenskis purchased their home, including the pool, from Fred Bancroft in December 1977. Bancroft had purchased the pool in 1973 from Hilson Pool Company, which had installed it in his backyard. In addition to the pool manufacturer, plaintiff's lawsuit named

warn the Plaintiff of the dangerous conditions existing in the pool . . . ."

On January 20, 1984, defendant moved for summary judgment pursuant to GCR 1963, 117.2(1), alleging failure to state a claim. The motion was predicated on the "open and obvious danger" rule —a manufacturer has no duty to warn of dangers involved in the use of simple and otherwise nondefective products which are so open and obvious that a reasonably prudent user would require no warning. The trial court granted the motion on April 9, 1984. Plaintiff subsequently filed a motion for rehearing, which was denied on May 2, 1985.

Plaintiff filed a timely claim of appeal, and the Court of Appeals reversed on January 17, 1989. 174 Mich App 321; 435 NW2d 480 (1989). The Court opined that the "open and obvious danger" rule relied upon by the trial court is no longer viable in Michigan and that, at any rate, the risk of serious injury, i.e., quadriplegia, is not an obvious danger:

We do not believe the risk is open and obvious. We believe the risk of serious injury, in this case

---

as defendants the Wilcenskis, Bancroft, and Hilson. Bancroft was dismissed pursuant to his motion for summary judgment in 1981. Plaintiffs appealed, and the Court of Appeals affirmed in *Glittenberg v Bancroft*, unpublished opinion per curiam of the Court of Appeals, decided July 27, 1982 (Docket No. 58254). Hilson was never served and is not an active defendant in the case. The Wilcenskis moved for summary judgment on two grounds: (1) that they had no duty to warn of the obvious danger, and (2) that the recreational land use statute, MCL 300.201; MSA 13.1485, precluded liability. The trial court denied summary judgment on the duty to warn theory; however, it granted summary judgment on the basis of the recreational land use statute. Plaintiffs appealed and the Wilcenskis cross-appealed. The Court of Appeals affirmed the ruling with respect to the duty to warn issue but reversed summary judgment in favor of the Wilcenskis on the basis of the land use statute. The Wilcenskis have not pursued a further appeal in this Court. As a result of this procedural history, the pool manufacturer, Doughboy Recreational Industries, Inc., is the only remaining defendant in this appeal.

paraplegia, is not obvious in the absence of some form of warning. A simple act of pleasure on a hot summer's day, a dive into a pool, can result in a lifetime of heartache, frustration, pain and loss. Nothing in the appearance of the pool itself gives a warning of the very serious consequences to which a mundane dive can lead. Nor are we convinced that the danger of serious injury from a dive is a risk of which the public is generally aware. [174 Mich App 326.]

We then granted leave to appeal. 433 Mich 880 (1989).[3]

II

Typically, the perimeters of appellate review are defined by the procedural posture of the case. In this instance, we are called upon to review the disposition of a pretrial motion for summary judgment. Although defendant's motion was brought pursuant to GCR 1963, 117.2(1), failure to state a claim, the record makes clear that the parties, the trial court, and the Court of Appeals relied on matters outside of the pleadings—most notably plaintiff's deposition testimony—to argue and rule on the motion. In such a situation, even though the parties and the lower courts have referred to the motion as one for failure to state a claim, we will treat it as one brought pursuant to then GCR

[3] Our grant of leave to appeal is limited to the issues: (1) whether the defendant manufacturer had a duty to warn the plaintiff that serious or permanent injuries could result from a dive into the shallow end of the defendant's above-ground pool and (2) whether it was error for the trial court to grant summary judgment to the defendant either (a) because the plaintiff failed to state a claim upon which relief could be granted, GCR 1963, 117.2(1), or (b) because there was an absence of a genuine issue of material fact in dispute and defendant was entitled to judgment as a matter of law pursuant to GCR 1963, 117.2(3).

1963, 117.2(3), under which the court may properly consider matters outside of the pleadings.[4]

A federal rule, FR Civ P 12(b)(6), which was the model for the former GCR 1963, 117.2(1) and the current MCR 2.116(C)(8), provides that a dismissal is appropriate if a pleading fails to state a claim upon which relief can be granted. However, the federal rule also states that

> [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. [FR Civ P 12(b).]

Although no analogous provision appears in our court rules, Michigan appellate courts have previously reviewed the disposition of a motion for summary judgment as though it were brought

---

[4] GCR 1963, 117.2 provides:

> Grounds. The motion for summary judgment shall state that the moving party is entitled to judgment in his favor because of any 1 of the following grounds:
>
> *   *   *
>
> (3) that except as to the amount of damages there is no genuine issue as to any material fact, and the moving party is therefore entitled to judgment as a matter of law.

GCR 1963, 117.3 provides:

> A motion based upon sub-rule 117.2(3) shall be supported by affidavits, and the opposing party prior to the day of hearing may serve opposing affidavits. . . . Such affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties shall be considered by the court at the hearing.

under GCR 1963, 117.2(3), or MCR 2.116(C)(10), where the parties have gone outside the pleadings and even though the parties and the lower courts have labeled the motion as one for failure to state a claim under MCR 2.116(C)(8) or GCR 1963, 117.2(1). See, e.g., *Velmer v Baraga Area Schools,* 430 Mich 385, 389; 424 NW2d 770 (1988); *Ross v Jaybird Automation, Inc,* 172 Mich App 603, 606; 432 NW2d 374 (1988); *Huff v Ford Motor Co,* 127 Mich App 287, 293; 338 NW2d 387 (1983). Thus, we will treat the present motion as if it had been brought pursuant to GCR 1963, 117.2(3).

Such a motion tests the factual basis of a plaintiff's claim and may be granted only if, giving " 'the benefit of any reasonable doubt to the opposing party,' " it is determined that " 'there is no genuine issue as to any material fact.' " *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973).

III

Actionable negligence presupposes the existence of a legal relationship—in other words, a duty. *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967). This maxim applies as a matter of course to products liability actions. A prima facie case of negligent failure to warn requires the plaintiff to demonstrate that the defendant manufacturer owed the plaintiff a duty to warn of the danger. See *Antcliff v State Employees Credit Union,* 414 Mich 624; 327 NW2d 814 (1982); *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). As explained by this Court in *Antcliff, supra,* pp 630-631:

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard

of conduct toward another." Prosser, Torts (4th ed), § 53, p 324. The terse legal conclusion that a duty is owed by one to another represents a judgment, as a matter of policy, that the latter's interests are entitled to legal protection against the former's conduct.

It is equally well established that the threshold issue of the existence of a duty is a question of law for the court to decide:

> It is generally agreed that the duty question— "whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other"—is to be decided by the court.
>
> Plaintiffs contend, however, that where the scope and nature of the relationship between the plaintiff, defendant and others determines whether a duty is owed, the question is for the jury.
>
> It is commonplace to say that a particular defendant owes a duty to a particular plaintiff, but such a statement, although not incorrect, merges two distinct analytical steps. It is for the court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty the breach of which may result in tort liability. It is for the jury to determine whether the facts in evidence establish the elements of that relationship. Thus, the jury decides the question of duty only in the sense that it determines whether the proofs establish the elements of a relationship which the court has already concluded give rise to a duty as a matter of law.
>
> It is also for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised. [*Smith v Allendale Mutual Ins Co*, 410 Mich 685, 713-715; 303 NW2d 702 (1981). See also *Antcliff, supra; Moning, supra; Elbert v Sagi-*

*naw*, 363 Mich 463, 476; 109 NW2d 879 (1961); Prosser & Keeton, Torts (5th ed), § 37, p 236.]

A manufacturer is subject to liability for failure to warn about a risk inherent in the way a product is designed that is related to the intended uses, as well as the reasonably foreseeable uses of the product. However, the courts "have never gone so far as to make sellers insurers of their products and thus absolutely liable for any and all injuries sustained from the use of those products." *Prentis v Yale Mfg Co*, 421 Mich 670, 682-683; 365 NW2d 176 (1984). In the failure to warn theory of liability,

> the danger is not in the manufacture but in the product itself, and its availability is deemed beneficial notwithstanding the presence of danger. Furthermore, since almost every product would appear to have some potential for inflicting harm, and since it would appear that instructions and warnings could not reasonably be required in the marketing of every product, a rule as to standards of conduct must be applied in determining the circumstances under which a warning or instruction is required so as to keep the product from being considered "defective" without the warning. [Anno: *Failure to warn as basis of liability under doctrine of strict liability in tort*, 53 ALR3d 239, § 2, pp 243-244.]

The existence of a duty in failure to warn cases has consequently been qualified, most notably by the "open and obvious danger" rule. As explained in Prosser & Keeton, *supra*, § 96, p 686:

> It is often said that there is no duty to warn of obvious dangers. It is clear that there should be no liability for failing to warn someone of a risk or

hazard which he appreciated to the same extent as a warning would have provided.[5]

The court in the oft-cited case of *Jamieson v Woodward & Lothrop,* 101 US App DC 32; 247 F2d 23 (1957), cert den 355 US 855 (1957), described the underlying concept of the "open and obvious danger" rule:

> It seems clear under all or any of the cases or text authorities that, where a manufactured article is a simple thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user, if the article does not break or go awry, but injury occurs through a mishap in normal use, the article reacting in its normal and foreseeable manner, the manufacturer is not liable for negligence. [*Id.* at 37.]

The *Jamieson* court set forth a number of hypothetical examples:

> The law does not require that an article be accident-proof or incapable of doing harm. It would be totally unreasonable to require that a manufacturer warn or protect against every injury which may ensue from mishap in the use of his product. Almost every physical object can be inherently dangerous or potentially dangerous in a sense. A lead pencil can stab a man to the heart or puncture his jugular vein, and due to that potentiality it is an "inherently dangerous" object; but, if a person accidentally slips and falls on a pencil-point

---

[5] Restatement Torts, 2d, § 402A, comment (j), p 353, reads in pertinent part:

> [A] seller is not required to warn with respect to products . . . when the danger, or potentiality of danger, is generally known and recognized.

in his pocket, the manufacturer of the pencil is not liable for the injury. He has no obligation to put a safety guard on a lead pencil or to issue a warning with its sale. A tack, a hammer, a pane of glass, a chair, a rug, a rubber band, and myriads of other objects are truly "inherently dangerous," because they might slip . . . [b]ut the doctrines fashioned by the law for inherently dangerous objects do not encompass these things. A hammer is not of defective design because it may hurt the user if it slips. A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers. [*Id.,* p 35. See also American Law of Products Liability, 3d, § 33:25, pp 52-55.]

The "open and obvious danger" rule, although abandoned in the jurisdiction of its origin (New York) and some states, remains a broadly accepted principle of products liability law. See anno: *Products liability: Modern status of rule that there is no liability for patent or obvious dangers,* 35 ALR4th 861, and cases collected therein. The current vitality of the "open and obvious danger" rule in Michigan is at the heart of the present controversy.

In *Fisher v Johnson Milk Co,* 383 Mich 158; 174 NW2d 752 (1970), this Court first articulated the rule that a defendant manufacturer has no duty to warn of a known or obvious danger associated with the use of a simple tool. In *Fisher,* the plaintiff, an attorney, purchased from the defendant a wire carrier made to carry four half-gallon bottles of milk. On one stormy day, as the plaintiff was carrying the full carrier into his house, he slipped and fell on some ice, causing the bottom of the carrier to strike the sidewalk and the bottles to break. The plaintiff cut his hand severely and sued the defendant for an alleged negligent failure

to warn. In affirming summary judgment for the defendant, this Court stated:

> There was no inherent, hidden or concealed defect in the wire carrier. Its manner of construction, how the bottles would rest in it, and what might happen if it were dropped, upright, on a hard surface below, with the possibility that the contained bottles might break, was plain enough to be seen by anyone including a patent attorney as well as a milk dealer. There is no duty to warn or protect against dangers obvious to all. [*Fisher, supra*, p 160.]

The *Fisher* Court, citing *Jamieson, supra*, recognized that no product is totally accident proof:

> "If the manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. . . . In such cases, . . . the very nature of the article gives notice and warning of the consequences to be expected, of the injuries to be suffered. In other words, the manufacturer is under no duty to render a machine or other article 'more' safe—as long as the danger to be avoided is obvious and patent to all." [*Id.*, pp 162-163, quoting *Campo v Scofield*, 301 NY 468, 472; 95 NE2d 802 (1950).][6]

The Michigan courts have subsequently applied the "open and obvious danger" rule to diving

---

[6] The "open and obvious danger" rule laid down in *Fisher, supra*, was not a dramatic departure from prior case law. See *Nabkey v Jack Loeks Enterprises*, 376 Mich 397; 137 NW2d 132 (1965) (the plaintiff was injured while jumping on a trampoline and was not entitled to recover from the owner/operator of the trampoline park; there was nothing the instructor could have done which was not readily apparent to the plaintiff or which was not under the plaintiff's control). .

accident cases alleging a manufacturer's failure to warn—with varying results.

In *Hensley v Muskin Corp*, 65 Mich App 662; 238 NW2d 362 (1975), the Court of Appeals affirmed summary judgments on behalf of a pool manufacturer, retailer, and owner in a case in which the plaintiff dove off of a seven-foot garage roof into a four-foot deep swimming pool and complained that the defendants had a duty to warn him not to dive. The plaintiff was familiar with the pool and its shallow depth, having helped assemble the pool. The Court, citing *Fisher, supra,* held that none of the defendants "were under any duty to warn this plaintiff of an obviously dangerous use of an otherwise nondangerous product." *Hensley, supra,* p 663.

However, in *Horen v Coleco Industries, Inc,* 169 Mich App 725; 426 NW2d 794 (1988), the Court of Appeals refused to apply the "open and obvious danger" rule. The plaintiff in *Horen* became a quadriplegic when he attempted a flat, shallow dive from a standing position on the deck of an above-ground pool into approximately four feet of water. The plaintiff, who had some swimming and diving experience, had observed others jumping and diving into the pool and had previously executed a successful shallow dive. The pool had a warning label affixed to the base of the chain-link fence adjoining the pool which read: "No Diving. Shallow Water." The plaintiff did not see the sign. The trial court granted summary disposition in favor of the defendants, finding no duty to warn of an open and obvious danger inherent in a simple product. The Court of Appeals reversed, declining to follow *Hensley, supra.* Instead, the Court concluded that the open and obvious danger rule articulated in *Fisher* no longer accurately represented the law in Michigan since it subsequently

had been modified by the more recent decision in
*Owens v Allis-Chalmers Corp,* 414 Mich 413; 326
NW2d 372 (1982). The *Horen* Court explained:

> *Owens* opined that a manufacturer is not auto-
> matically excused from responsibility merely by
> showing that the risks inhering in a simple tool or
> product are open and obvious. *Id.* at 424-425. Al-
> though such a determination may be utilized as
> one factor among others to conclude that the
> manufacturer has no duty to warn because the
> product is not unreasonably dangerous, the new
> test is whether the risks are unreasonable in light
> of the foreseeable injuries. *Id.* at 425. [*Id.,* p 729.]

The *Horen* Court also found *Hensley* to be dis-
tinguishable on the facts, *id.,* p 730, and held that
there was evidence from which a jury could con-
clude that the manufacturer's product posed an
unreasonable and unforeseeable danger that death
or paraplegia could result. *Id.,* p 731.

*Owens, supra,* was a lawsuit which alleged negli-
gent design of a forklift for failure to provide a
driver restraint. The plaintiff's husband was killed
when, for an undetermined reason, the forklift
which he was operating left the roadway, struck a
concrete post, and rolled over. The forklift was
tested after the accident and found to be in perfect
mechanical order. The trial court directed a ver-
dict in favor of the defendant manufacturer. The
Court of Appeals affirmed, finding that the risk of
injury should have been obvious to the decedent,
an experienced forklift operator. This Court also
affirmed the directed verdict, but for different
reasons. The *Owens* Court noted that the language
in *Fisher, supra,* "would tend to support the propo-
sition that liability does not attach when the
dangers are patent and obvious." *Owens, supra,* p
423. The *Owens* Court nevertheless refused to

apply the "open and obvious danger" rule to the facts, stating:

> Our Court of Appeals has essentially limited the language in our decision in *Fisher* by the fact that *Fisher* involved a simple product or tool. *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973); *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972); see, also, *Jennings v Tamaker Corp,* 42 Mich App 310; 201 NW2d 654 (1972). We believe that such a limitation is proper. Obvious risks may be unreasonable risks, and there is no justification for departing from general negligence and breach of implied warranty principles merely because the dangers are patent.
>
> This is not to say that the obviousness of the danger is irrelevant. As in *Fisher,* the obviousness of the risks that inhere in some simple tools or products is a factor contributing to the conclusion that such products are not unreasonably dangerous. The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries. [*Id.,* p 425.]

Utilizing this latter test, the *Owens* Court concluded that the plaintiff's evidence did not raise an issue of fact concerning any unreasonable risk at the time of the design or manufacture of the vehicle; a directed verdict was therefore properly granted in favor of the defendant manufacturer.

Did the *Owens* decision overrule *Fisher* and preclude application of the "open and obvious danger" rule to the present facts? The Court of Appeals panel in the instant case, citing *Horen, supra,* thought so, and plaintiff now argues that the proper test is not whether the risks are open and obvious, but whether they are unreasonable in light of foreseeable injuries. Cf. *Francisco v Manson, Jackson & Kane, Inc,* 145 Mich App 255; 377

NW2d 313 (1985); *Casey v Gifford Wood Co,* 61 Mich App 208, 212-213; 232 NW2d 360 (1975). However, several factors contradict such a conclusion, leading us to hold that the *Owens* decision did not repudiate the "open and obvious danger" rule.

First, *Owens* is factually inapposite. *Owens,* unlike *Fisher* and the instant case, involved a claim that a complex machine was defectively designed because it lacked a necessary safety device. It was not a failure to warn case. In fact, the *Owens* Court expressly noted that it did not decide any issue regarding the defendant's alleged duty to warn of a product defect. *Owens, supra,* p 427. It is well recognized that design defect and duty to warn cases are two separate and distinct theories of products liability which entail different inquiries.

Moreover, we do not find in the language of the *Owens* decision a manifest intent to overrule *Fisher.* The language of the decision merely relegates the "open and obvious danger" rule to a narrower class of cases. The *Owens* Court adopted the limitation placed on the *Fisher* holding by appellate courts restricting application of the "open and obvious danger" rule to cases involving simple tools and ratified the previously recognized distinction between simple and complex products. See, e.g., *Mach v General Motors Corp,* 112 Mich App 158; 315 NW2d 561 (1982), *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693; 298 NW2d 620 (1980), lv den 417 Mich 910 (1983), *Graham v Ryerson,* 96 Mich App 480; 292 NW2d 704 (1980), *Coger v Mackinaw Products Co, supra, Jennings v Tamaker Corp, supra,* and *Byrnes v Economic Machinery Co, supra.*

Failure to warn cases decided after *Owens* have continued to endorse the "open and obvious dan-

ger" rule. Less than one month after *Owens* was released, this Court decided *Antcliff v State Employees Credit Union, supra,* which approvingly cited *Fisher* and reaffirmed that the "open and obvious danger" rule is still good law where simple products are involved. The plaintiff in *Antcliff* was seriously and permanently injured when the support system of a powered scaffold on which he was standing gave way unexpectedly and fell to the ground. The plaintiff's safety line apparently failed, and he fell with the scaffold. Plaintiff alleged that the manufacturer breached its duty to instruct on or give directions for the safe rigging of the scaffold. This Court held on the facts of the case that the defendant was under no duty to instruct or give directions for the safe rigging of its product:

> [O]ur prior decisions support a policy that a manufacturer's standard of care includes the dissemination of such information, whether styled as warnings or instructions, as is appropriate for the safe use of its product. If warnings or instructions are required, the information provided must be adequate, accurate and effective.
>
> * * *
>
> This policy has limits. It has been applied in instances where the product itself had dangerous propensities. Out of recognition that the manufacturer's interests are also entitled to protection, this policy has not been applied in situations involving known or obvious product-connected dangers where the product itself is not defective or dangerous. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970) (wire milk bottle carrier). See, also, Anno: *Products liability—duty to warn,* 76 ALR2d 9, 28-37, and cases cited therein.
>
> In the instant case, Spider manufactured the scaffold which happened to be involved in a con-

struction site accident. The scaffold was not found by the jury to be defective. The most that can be said of the accident is that the load-bearing capacity of the rigging system designed by plaintiff Howard Antcliff and his co-worker was insufficient to support the powered scaffold. This led to the system's collapse. We are unable to conclude that the scaffold's weight was a dangerous propensity which necessitates vindication of the policy. In addition, plaintiff Howard Antcliff and his co-worker were both journeyman painters. In view of their knowledge and experience as riggers, we feel constrained to charge them with full appreciation of the danger of inadequately supporting the scaffold on which they worked. *As a result, the circumstances here (a non-defective product lacking in dangerous propensities and a known or obvious product-connected danger) do not support application of the policy which would require Spider to provide instructions for the safe rigging of its product.* [*Antcliff, supra,* pp 638-640. Emphasis added.]

Numerous other post-*Owens* cases either have followed the "open and obvious danger" rule or recognized but distinguished it on the basis of the simplicity or complexity of the product. See, e.g., *Michigan Mutual Ins Co v Heatilator Fireplace,* 422 Mich 148; 366 NW2d 202 (1985), *Wiegerink v Mitts & Merrill,* 182 Mich App 546; 452 NW2d 872 (1990), *Wessels v E W Bliss Co, Inc,* 180 Mich 440; 447 NW2d 758 (1989), *Reeves v Cincinnati, Inc,* 176 Mich App 181; 439 NW2d 326 (1989), *Pettis v Nalco Chemical Co,* 150 Mich App 294; 388 NW2d 343 (1986), *Trotter v Hamill Mfg Co,* 143 Mich App 593; 372 NW2d 622 (1985), *Warner v General Motors Corp,* 137 Mich App 340; 357 NW2d 689 (1984), *Bullock v Gulf & Western Mfg,* 128 Mich App 316; 340 NW2d 294 (1983), *Bishop v Interlake, Inc,* 121 Mich App 397; 328 NW2d 643 (1982), and *Maletich v Zemaiduk,* 115 Mich App 206; 320

NW2d 72 (1982). Three recent cases following the "open and obvious danger" rule are diving accident cases. See *Spaulding v Lesco Int'l Corp,* 182 Mich App 285; 451 NW2d 603 (1990); *Johnson v Coleco Industries, Inc,* unpublished opinion per curiam of the Court of Appeals, decided January 17, 1985 (Docket No. 76152), and *Johnson v Park Shore Marina,* Docket No. K86-452-CA8 (WD Mich, 1988), aff'd 872 F2d 1026 (CA 6, 1989), cert den 493 US 853; 110 S Ct 155; 107 L Ed 2d 113 (1989).

The Court of Appeals in the instant case "conducted a thorough review of swimming pool injury cases in other jurisdictions" and conceded that "[g]enerally the courts have been unwilling to impose a duty to warn on the manufacturer or have concluded that, because of a plaintiff's swimming experience and knowledge of diving procedures, the absence of a warning was not a proximate cause of plaintiff's injury." 174 Mich App 325-326. See *Kelsey v Muskin, Inc,* 848 F2d 39 (CA 2, 1988), cert den 488 US 1030 (1989), *Caraballo v United States,* 830 F2d 19 (CA 2, 1987), *Colosimo v May Dep't Store Co,* 466 F2d 1234 (CA 3, 1972), *Winant v Carefree Pools,* 709 F Supp 57 (ED NY, 1989), aff'd without opinion 891 F2d 278 (CA 2, 1989), *Dowen v Hall,* 191 Ill App 3d 903; 138 Ill Dec 933; 548 NE2d 346 (1989), *Amatulli v Delhi Construction Corp,* 156 AD2d 500; 548 NYS2d 774 (1989), *Howard v Poseidon Pools, Inc,* 72 NY2d 972; 530 NE2d 1280 (1988), *Caris v Mele,* 134 AD2d 475; 521 NYS2d 260 (1987), *Belling v Haugh's Pools, Ltd,* 126 AD2d 732; 511 NYS2d 732 (1987), *Boltax v Joy Day Camp,* 67 NY2d 617; 490 NE2d 527 (1986), *Smith v Stark,* 67 NY2d 693; 490 NE2d 841 (1986); *Smith v City & Co of Denver,* 726 P2d 1125 (Colo, 1986), *Vallillo v Muskin Corp,* 212 NJ Super 155; 514 A2d 528 (1986), *Clark v Lumbermans Mutual Ins Co,* 465 So 2d 552 (Fla, 1985),

*McCormick v Custom Pools, Inc,* 376 NW2d 471
(Minn App, 1985), *Benjamin v Deffet Rentals, Inc,*
66 Ohio St 2d 86; 419 NE2d 883 (1981), *Fuller v
California,* 51 Cal App 3d 926; 125 Cal Rptr 586
(1975), *Smith v American Flyers, Inc,* 540 P2d
1212 (Okla, 1975), and *Telac v Maszczenski,* 248
Md 476; 237 A2d 434 (1968).

Despite this abundance of authority favoring
application of the "open and obvious danger" rule
to the present circumstances, the Court of Appeals
in the instant case nevertheless chose to adopt the
reasoning of a federal case which rejected applica-
tion of the "open and obvious danger" test to an
above-ground pool diving accident. In *Corbin v
Coleco Industries, Inc,* 748 F2d 411 (CA 7, 1984),
the plaintiff sustained a severe injury from a
headfirst dive into a shallow above-ground pool.
The trial court granted summary judgment for the
defendant manufacturer, finding "no duty to warn
of open and obvious dangers . . . ." 748 F2d 413.
The federal Court of Appeals reversed, upon the
basis of testimony concerning the "crucial point"
that

> even though people are generally aware of the
> danger of diving into shallow water, they believe
> that there is a safe way to do it, namely, by
> executing a flat, shallow dive. If people do in fact
> generally hold such a belief, then it cannot be said,
> as a matter of law, that the risk of spinal injury
> from diving into shallow water is open and obvi-
> ous. Whether a danger is open and obvious de-
> pends not just on what people can see with their
> eyes but also on what they know and believe about
> what they see. In particular, if people generally
> believe that there is a danger associated with the
> use of a product, but that there is a safe way to
> use it, any danger there may be in using the

product in the way generally believed to be safe is
not open and obvious. [*Corbin, supra,* pp 417-418.][7]

We are not persuaded by the reasoning of the
*Corbin* court. Instead, we agree with those courts
which have found the dangers of propelling what
is typically a five-foot tall or more physical frame
headfirst into observably shallow water merely
three or four feet deep to be open and obvious.

An open and obvious danger has been defined as
what is visible or well-known:

> What is "open and obvious" has been defined as
> what is visible, what is a well known danger, or
> what is discernible by casual inspection. Thus, one
> cannot be heard to say that he did not know of a
> dangerous condition that was so obvious that it
> was apparent to those of ordinary intelligence.
> [American Law of Products Liability, 3d, § 33:26, p
> 56.]

In other words, what is "open and obvious" to
all reasonable persons can be objectively deter-
mined:

> [C]ourts have usually meant by "obvious dan-
> ger" a condition that would ordinarily be seen and
> the danger of which would ordinarily be appreci-
> ated by those who would be expected to use the
> product. [Prosser & Keeton, *supra,* pp 686-687.]

The parties in the instant case do not seriously
dispute that the above-ground swimming pool is a
simple product. As the defendant notes, there is
nothing deceiving about its appearance, nothing
enigmatic about its properties. It has no mechani-

---

[7] The *Corbin* court also placed considerable emphasis on evidence
suggesting that the plaintiff was an inexperienced swimmer, thereby
distinguishing him from the plaintiffs in other cases finding the risk
of diving to be open and obvious. 748 F2d 419.

cal devices, but rather is an uncomplicated non-defective product with universally known characteristics.

The danger involved in diving into shallow water is obvious to the reasonably prudent user of such a product. The admonition "feet first" is a matter of common knowledge where shallow water or water of an unknown depth is involved. In the instant case, the shallowness of the water was clearly visible.

Plaintiff argues that while he was conscious of some danger inherent in diving into shallow water, he did not appreciate the extent or seriousness of the injury he could sustain ("[c]onsciousness of a vague danger, without appreciation of the seriousness of the consequences, may require the manufacturer to provide warning . . . ." *Graham v Ryerson,* 96 Mich App 480, 489; 292 NW2d 704 [1980]). However, a danger deemed to be "open and obvious" is a danger that is objectively anticipatable—the "open and obvious danger" rule is based upon what the user *should have known.* In our view, a reasonably prudent user of an above-ground pool knows or *should know* that serious injury, including paralysis, is a potential risk and probable result of a headfirst dive into visibly shallow water. The "open and obvious danger" rule is not dependent on the subjective knowledge of a particular user. To adopt a requirement that persons voluntarily confronting open and obvious dangers must also be subjectively aware of each and every potential consequence of their action would be to effectively extinguish the doctrine itself.

Moreover, as the court noted in *Vallillo v Muskin Corp, supra,* p 161, n 3, an above-ground pool diving accident case,

At oral argument plaintiff contended that the precise nature of the injury was a material part of the recognition of the danger and asserted that there was no showing that plaintiff knew that he possibly could have been crippled. Thus, he contends that only a warning of the full extent of the possible injury would be adequate. In some settings where no serious injury of any kind is apparent, such additional explicit warnings might be appropriate; but we cannot overlook the wide variety of injuries to be listed if warnings were legally required to contain a list of all possible injuries (or even the severest injury that could be reasonably expected, usually death). Warning labels cannot be effective if they take on the characteristics of drug package inserts. It is generally sufficient if the warning gives general notice of a danger and the conduct to be avoided. For example, signs giving a warning of high voltage electricity that pictorially indicate not to touch wires or equipment, utilizing a lightning symbol, or a poison label with a skull and cross-bones, or even road signs indicating danger areas need not indicate the particular permanent physical harm that might befall a person who disregards the warning.

By virtue of plaintiff's knowledge and swimming experience, and plain common sense, plaintiff should have known of the danger of spinal injury. It would strain credibility to conclude that the risks were not appreciated by this plaintiff. It is clear from the plaintiff's deposition testimony that with all of the relevant information in his grasp—full knowledge of the depth of the water, familiarity and prior experience with the pool, and better-than-average swimming and diving training—the plaintiff nevertheless attempted a flat dive into the shallow end of the pool. The record shows that the plaintiff realized the importance of entering the water on a horizontal plane so as to avoid hitting the bottom. He admitted that he was present when

his wife told his daughter not to dive headfirst into the Wilcenskis' pool. Plaintiff further testified:

> *Q.* If they [the Wilcenskis] had told you that it was three feet deep, it was shallow, be careful, would they have been telling you anything you didn't already know?
> *A.* No, they wouldn't have.

The ultimate conclusion to be made from the evidence of record is that the presence of a warning label on the pool in question would not have deterred the plaintiff. The material facts are not in dispute in this regard. Having already understood the open and obvious danger involved, and disregarding the same, a warning not to dive into the shallow end of the pool would not have given the plaintiff any additional information. A warning would have been superfluous. Plaintiff's error in judgment, not a failure to warn, was the basis of this accident.

Since the dangers associated with diving into visibly shallow water in an above-ground pool are open and obvious to the reasonably prudent user, plaintiff in the instant case must, as a matter of law, be held to the knowledge and appreciation of the risk likely to be encountered in his headfirst dive. We would hold that the defendant manufacturer owed no duty to warn the plaintiff on the facts of this case. Plaintiff has consequently failed to make out a prima facie claim of negligence.

In light of this conclusion, that the defendant's duty to warn is obviated by a danger which is open and obvious, we would reverse the decision of the Court of Appeals and reinstate the trial court's order granting summary judgment in favor of defendant. However, for purposes of resolution of this case, in light of the plurality status of this

opinion and the need of practical guidance for the
trial court, we join in the statement by Justice
BOYLE that this case should be remanded to the
trial court "for a determination of the threshold
question whether the duty of reasonableness im-
posed on the defendant required warning."

RILEY, C.J., and BRICKLEY, J., concurred with
GRIFFIN, J.

BOYLE, J. I agree with Justice ARCHER that a
manufacturer's duty to warn is not automatically
excused when the risk of harm is obvious. The rule
that a manufacturer owes no duty to warn of a
danger "obvious to all" was stated by this Court in
*Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174
NW2d 752 (1970). The *Fisher* doctrine, however,
was seriously undermined by this Court's decision
in *Owens v Allis-Chalmers Corp,* 414 Mich 413;
326 NW2d 372 (1982). The *Owens* Court rejected
the contention that a manufacturer owed no duty
with respect to an alleged design defect in a fork-
lift merely because the defect was obvious:

> Obvious risks may be unreasonable risks, and
> there is no justification for departing from general
> negligence and breach of implied warranty princi-
> ples merely because the dangers are patent. [*Id.* at
> 425.]

While the *Owens* Court approvingly cited case
law which had limited the application of *Fisher* to
situations involving simple products or tools, its
reasoning undermined even this narrow ground
for preserving the absolute rule of *Fisher:*

> As in *Fisher,* the obviousness of the risks that
> inhere in some simple tools or products is a factor
> contributing to the conclusion that such products

are not unreasonably dangerous. The test, how-
ever, is not whether the risks are obvious, but
whether the risks were unreasonable in light of
the foreseeable injuries. [*Owens, supra,* p 425.]

Thus, even when a simple product is at issue, the
ultimate standard by which a manufacturer's con-
duct must be measured is one of reasonableness. I
cannot agree with the lead opinion's characteriza-
tion of *Antcliff v State Employees Credit Union,*
414 Mich 624; 327 NW2d 814 (1982), as "reaffirm-
[ing] that the 'open and obvious danger' rule is
still good law where simple products are involved."
*Ante,* p 691. The Court in *Antcliff* emphasized the
sophisticated knowledge of the professional users
of the powered scaffolding manufactured by the
defendant in reaching the conclusion that the
defendant did not owe a duty to instruct on the
safe rigging of its powered scaffold. *Id.* at 640-641.
*Antcliff* involved a complex product, and the hold-
ing that no duty existed turned on the sophisti-
cated knowledge of the professional users of the
product. While the Court properly considered the
"known or obvious product-connected danger," *id.*
at 639-640, its analysis went beyond that single
consideration. The Court performed the required
risk/utility balance when it weighed against the
fact of the users' sophisticated knowledge the
difficulty and burden to the manufacturer of pro-
viding instructions on the basic operations of its
products. *Id.* at 640. In short, the *Antcliff* Court
implemented the rule stated in *Owens*—that the
obviousness of a risk inherent in a product is
merely a factor to be considered in determining
whether the manufacturer's duty of reasonable
conduct under the circumstances requires the
manufacturer to provide warnings of such danger.

"The reasonableness of the risk of harm
. . . turns on how the utility of the defendant['s]
conduct is viewed in relation to the magnitude of
the risk." *Moning v Alfono,* 400 Mich 425, 433-434;
254 NW2d 759 (1977). The threshold question in
this case, never answered in the trial court, is
whether the danger of serious injury resulting
from diving into shallow, above ground pools, was
of sufficient magnitude that a reasonable manufac-
turer would have warned of it. This is the inquiry
whether the employer owed a duty to warn. The
existence of a duty is a question of law. See, e.g.,
*Smith v Allendale Mutual Ins Co,* 410 Mich 685,
714-715; 303 NW2d 702 (1981). Nevertheless, the
determination regarding the existence of a duty to
warn requires inquiry into the factual questions of
foreseeability and reasonableness: Were injuries
such as plaintiff's foreseeable, and, if so, was the
frequency and magnitude of such injuries such
that a reasonable manufacturer would have
warned? The existence of a duty to warn is a
complex question, involving the familiar but some-
times nebulous considerations involved in the risk-
utility balancing test. The balancing of the risk
inherent in a product which does not contain
warnings against the utility of that product is
itself an inquiry into social policy. I would submit
that the inquiry is therefore initially one for the
court.

The trial court in this case did not apply the
necessary balancing test to determine whether the
danger of serious injury was of sufficient magni-
tude that a reasonable manufacturer would have
warned of it. Rather, the trial court based its
conclusion that no duty existed solely on the obvi-
ousness of the danger. I would remand to the trial
court for a determination of the threshold question

whether the duty of reasonableness imposed on the defendant required warning.[1]

The judgment whether a warning was required in the circumstances of this case should not be made in a vacuum. The fundamental problem in cases such as this is that we lack the information necessary to make an intelligent decision, even with regard to the obviousness of the dangers of diving. We remain largely uninformed regarding such crucial questions as the efficacy of warnings against diving when they are provided, whether there is, in fact, any safe way to dive into shallow water, and what dangers are actually perceived by the users of above-ground pools.[2] On remand, we urge the parties to provide evidence which will allow the court to evaluate the risk inherent in defendant's product, and its obvious or nonobvious qualities.[3]

Assuming a duty to warn, the question becomes the adequacy of the warnings which were enclosed with the pool when it was initially purchased, but apparently never used. The adequacy of the warnings is a question for the jury. See *Pettis v Nalco Chemical Co,* 150 Mich App 294, 303; 388 NW2d 343 (1986), lv den 426 Mich 881 (1986).

LEVIN, J., concurred with BOYLE, J.

---

[1] The trial court's resolution by summary disposition did not turn on the question of proximate cause, nor did the Court of Appeals consider that question. By writing for remand for a determination of the existence of a duty, I do not mean to intimate that defendant is precluded from again moving for summary disposition on the ground that, if a duty existed, any breach by defendant was not the proximate cause of plaintiff's injuries.

[2] The appendices to the brief amicus curiae for the Foundation for Spinal Cord Injury Prevention and the Aquatic Injury Safety Foundation address these and other factual questions bearing on the reasonableness of defendant's conduct. However, these materials are not part of the record and apparently were not presented in the trial court.

[3] See Henderson & Twerski, *Doctrinal collapse in products liability: The empty shell of failure to warn,* 65 NYU L R 265, 323 (1990).

CAVANAGH, J., concurred only in the result.

ARCHER, J. The issues presented are whether the defendant pool manufacturer had a duty to warn the plaintiffs that serious or permanent injuries could result from a dive into the shallow end of their above-ground pool, and whether it was error for the trial court to grant summary judgment for the defendant either (a) because the plaintiffs failed to state a claim upon which relief could be granted, GCR 1963, 117.2(1), or (b) because there was an absence of a genuine issue of material fact in dispute and defendant was entitled to judgment as a matter of law pursuant to GCR 1963, 117.2(3).

I would hold that the trial court's grant of the defendant's motion for summary judgment was improper upon the basis of the erroneous conclusion that the obviousness of a risk totally excuses a manufacturer's duty to warn. See *Moning v Alfono,* 400 Mich 425, 449-450; 254 NW2d 759 (1977), *Antcliff v State Employees Credit Union,* 414 Mich 624, 630; 327 NW2d 814 (1982), *Owens v Allis-Chalmers Corp,* 414 Mich 413, 425; 326 NW2d 372 (1982), and *Horen v Coleco Industries, Inc,* 169 Mich App 725, 729; 426 NW2d 794 (1988). The trial court failed to properly analyze the factual evidence presented in the plaintiff's deposition. As a result, the trial court's finding that the plaintiffs' claim contained no genuine issues of material fact,[1] was improper and precipitous under GCR 1963, 117.2(3), now MCR 2.116(C)(10).

I

Duty is defined as the existence of a relationship

---

[1] I agree with the assessment in the opinion for reversal that reliance on matters outside the pleadings converted the motion for failure to state a claim, GCR 1963, 117.2(1), now MCR 2.116(C)(8), into a claim that there were no genuine issues of material fact, GCR 1963, 117.2(3), now MCR 2.116(C)(10). See discussion below.

between an actor and an injured person giving rise
to a legal obligation on the actor's part for the
benefit of the injured person. *Moning v Alfono,
supra* at 438-439. The question whether a duty
exists presents an issue of law solely for the court.
See *Elbert v Saginaw,* 363 Mich 463, 476; 109
NW2d 879 (1961); *Antcliff v State Employees
Credit Union, supra* at 640. Generally, a manufac-
turer has a duty to warn of known dangers inher-
ent in a product or its contemplated use. See
*Comstock v General Motors Corp,* 358 Mich 163;
99 NW2d 627 (1959). However, this Court has also
held that there is no duty to warn or protect
against dangers obvious to all. *Fisher v Johnson
Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970)
(the manufacturer of a metal milk carrier was
sued for a hand injury occurring when the carrier
struck an icy sidewalk, breaking milk bottles).
However, unlike the opinion for reversal, I do not
believe the open and obvious test, standing alone,
addresses the considerations necessary to resolve
failure to warn issues.

A

In the years since *Fisher,* this Court has gradu-
ally departed from the premise that a manufactur-
er's duty to warn is totally excused when a risk is
open and obvious. In the more recent cases, the
focus of the duty to warn is on whether the risk of
danger is "reasonable." Beginning with *Moning,
supra* at 449-450 (a slingshot manufacturer was
sued when a twelve-year-old lost sight in one eye
after being struck by a slingshot pellet), this Court
stated, "Even if a person recognizes that his con-
duct involves a risk of invading another person's
interest, he may nevertheless engage in such con-
duct unless the risk created by his conduct is

unreasonable." Likewise, in *Antcliff, supra* at 630 (a scaffold manufacturer was sued for permanent injuries occurring when the scaffold on which the plaintiff stood unexpectedly gave way and fell to the ground), "A manufacturer's liability to a purchaser or a user of its product should be assessed with reference to whether its conduct [with regard to instructions or warnings] was reasonable under the circumstances." The clearest pronouncement, however, appeared in *Owens v Allis-Chalmers Corp, supra* at 425 (a forklift manufacturer was sued when the plaintiff was killed in an accident in which the forklift driven by the plaintiff was found on the side of the road, turned over, having apparently hit a concrete pole), wherein this Court declared, "As in *Fisher,* the obviousness of the risks that inhere in some simple tools or products is *a* factor contributing to the conclusion that such products are not unreasonably dangerous. The test, however, is not whether the risks are obvious, but whether the risks were unreasonable in light of the foreseeable injuries." (Emphasis added.) Moreover, our Court of Appeals in *Horen v Coleco Industries, Inc, supra* at 729 (a pool manufacturer was sued when the plaintiff was rendered a quadriplegic after a flat shallow dive into a four- to five-foot-deep pool), recently applied this standard to facts nearly identical to the case at bar, observing, "Although such a determination [that a risk is open and obvious] may be utilized as one factor among others to conclude that the manufacturer has no duty to warn because the product is not unreasonably dangerous, the new test is whether the risks are unreasonable in light of the foreseeable injuries."

Accordingly, in the present case, the trial court's grant of summary judgment under GCR 1963, 117.2(3), based upon the erroneous conclusion that,

standing alone, the alleged obviousness of the risk of injury totally excused the defendant manufacturer's duty to warn of inherently dangerous risks, was improper. The obviousness of a risk is only one factor to be considered in deciding whether a manufacturer has a duty to warn of product dangers and, therefore, cannot be the sole basis upon which a defective design case can be dismissed. Despite its obvious character, if a risk of danger is one not likely to be appreciated, see Prosser, Torts (4th ed), § 96, p 649, citing *Hopkins v E I DuPont de Nemours & Co,* 199 F2d 930 (CA 3, 1952), then a manufacturer may still have a duty to warn of inherent dangers associated with its product. Therefore, in the present case, even if the trial court *had* found that the specific risk of a quadriplegic injury was obvious, this fact would not necessarily have excused defendant Doughboy's duty to warn the plaintiff. For this reason, summary judgment was improper.

B

I disagree with the overall assessment in the opinion for reversal that under GCR 1963, 117.2(3), there was no genuine issue of material fact. Summary judgment pursuant to this court rule is proper only if there is no issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. In the present case, I believe the plaintiffs have been unjustly disserved because the trial court apparently did not consider the instant facts in the light most favorable to the nonmoving plaintiff, *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973), did not draw any inferences in favor of the plaintiff, *Dagen v Hastings Mutual Ins Co,* 166 Mich App 225, 229; 420 NW2d 111 (1987), and did

not give the benefit of every doubt to the opposing plaintiff, *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660; 332 NW2d 561 (1983), lv den 417 Mich 1100.15 (1983).

In the present case, the plaintiffs filed suit against the defendant manufacturer, principally claiming that the swimming pool in which David Glittenberg was injured was defective for failing to warn of dangerous conditions existing in the pool. Applying the previously enunciated test whether the risk of danger was unreasonable in light of the foreseeable injuries, see *Owens, supra* at 425, I would hold that the defendant's failure to sufficiently warn the plaintiff, in light of the tremendous risk of permanent quadriplegia, was unreasonable. The magnitude of the risk of irrevocable quadriplegia, in my view, substantially outweighs the utility of the defendant's conduct. See *Moning, supra* at 449-450. However, at the very least, this proposition should have been presented to and decided by a jury in order that the question regarding exactly what was reasonable under these particular circumstances be fully and fairly resolved. *Bonin v Gralewicz,* 378 Mich 521, 527, n *; 146 NW2d 647 (1966), citing Prosser, Torts (3d ed), § 52, pp 329-330.

Furthermore, in examining the open and obvious exception even as one factor to be considered with respect to a defendant's duty to warn, fault can still be found with the trial court's determination that the present risk was obvious as a matter of law. In my view, the trial court glossed over a particularly important query: Exactly *what* was obvious in this case? Injury in general? Danger in general? What is it that must be obvious before a court can properly decide that a risk associated with the use of a product is obvious as a matter of law? Here, the plaintiffs argue that the *specific*

risk of quadriplegia was not obvious. The defendant, on the other hand, maintains that it was enough that plaintiff David Glittenberg had some *general* appreciation of the risk involved with shallow diving. I disagree.

The question whether the plaintiff's awareness of the *general* risks (urged by the defendant to have been obvious to the plaintiff) excused the defendant's duty to warn should have been allowed to proceed to trial. As this Court reasoned in *Michigan Mutual Ins Co v Heatilator Fireplace,* 422 Mich 148, 154; 366 NW2d 202 (1985), "Even if it is arguable that [the plaintiff's] testimony establishes consciousness on his part of a vague danger, it would not preclude a jury from finding that a warning was nonetheless required to give him a full appreciation of the seriousness of the life-threatening risks involved." See also *Hardy v Proctor & Gamble Mfg Co,* 209 F2d 124 (CA 5, 1954); *Hopkins, supra.*

The plaintiff's deposition testimony reveals the following:

*Q.* What type of injury would you—prior to this did you know that [diving into shallow water] was dangerous?

\* \* \*

*A.* If you were to make a dive straight into shallow water?

*Q.* Yeah.

*A.* Yeah, I would say it's dangerous. *Just exactly what type of injury would result from it, I couldn't have said at the time.*

*Q.* Prior to that time did you know you could receive a serious injury if you dove straight in?

*A. As far as an injury like this, I would say no.*

*Q.* What sort of injury did you think you could—

*A.* If you got your arms out in front of you like you do all the time, broken arm *possibly,* concussion *possibly.*

* * *

*Q.* What do you have to know about how to dive?

*A.* Well, depending upon the depth of the water is a lot of it.

* * *

*Q.* Have you ever had swimming instructions?

*A.* Oh, yes.

*Q.* Did you ever have, as part of those instructions, any instruction in diving?

*A.* Yeah.

*Q. What did you learn* from that about the depth of water in diving?

*A. If you're going to dive in shallow water, you do a long dive so you don't go deep.*

* * *

*Q.* When you were in your swimming class and diving was discussed, was any mention made of injuries that you could receive from diving?

*A.* Not that I can recall, not specific injuries.

* * *

*Q.* What type of dive were you attempting to make on the day that this injury occurred?

*A.* Well, I would call it a long dive or a racing dive.

*Q.* Can you describe what that dive is?

*A.* You dive off low edge of the pool, diving straight out more than down so you don't go so deep.

* * *

*Q.* Did you consider yourself a pretty good swimmer prior to this?

*A.* Yes, I did.

* * *

*Q.* And you knew about diving and when you're diving into shallow water, you have to take precaution to dive so you're going across as opposed to down; is that correct?

*A.* Correct.

\*   \*   \*

*A. . . . I would say if you knew—were versed in diving and knew what type of dive you were doing, it would be safe.*

*Q. . . .* And you considered yourself versed in diving?

*A.* Yeah. [Emphasis added.]

Plaintiff's testimony acknowledges a degree of risk recognition, i.e., a broken arm or a concussion, but it did not include the contemplation of losing the permanent use of his limbs. Therefore, the question whether this specific danger was open and obvious is ripe for factual development. *Corbin v Coleco Industries, Inc,* 748 F2d 411, 418 (CA 7, 1984). In particular, the question whether the plaintiff's cognizance of the risk of possible concussion necessarily included the prospect of permanent disability should have precluded the court's grant of summary disposition on the question of obviousness. "The obviousness of a danger which makes a warning unnecessary has been held to present a question of fact, unless there is an absence of evidence supporting the view that the danger is obvious." 2 Hursh & Bailey, American Law of Products Liability (2d ed), § 8:15, pp 184-185.

In this case there was evidence that the risk of quadriplegia was not open and obvious. At his deposition, the plaintiff testified about having some awareness of "possible" danger associated with diving into shallow water, but his testimony did not reveal either that the risk of life-altering injury was known or open and obvious to him. Thus, this should have precluded summary judgment on the failure to warn issue. The determination of a plaintiff's level of risk recognition is critical to any decision to dispose of a case on the

basis of the question whether a defendant has a duty to warn. The plaintiff testified regarding a lack of specific recognition that his physical liberty lay in the balance, a fact which *could* have been made obvious by the presence of an explicit visible warning.

The plaintiff testified regarding having been instructed that it was possible to eliminate or reduce the risk of injury from diving into shallow water by executing a "long dive or a racing dive." The plaintiff's expressed belief is another crucial factor illustrating the impropriety of summary judgment based on the open and obvious standard. As the court in *Corbin, supra* at 417, stated, "If people do in fact generally hold such a belief [that certain diving techniques will prevent injury], then it cannot be said, as a matter of law, that the risk of spinal injury from diving into shallow water is open and obvious."

Hence, in light of the plaintiff's testimony that he had been instructed that dives *can be* safely made into shallow water, coupled with the fact that other similarly situated plaintiffs have or do hold like beliefs, the presumption that the possibility of crippling injury in this context is open and obvious to all as a matter of law is rebutted.

II

An explicit visible warning could have, more likely than not, altered the plaintiff's behavior in this instance. Prosser states, "There are two separate goals to be achieved by adequate warnings. These are risk reduction and the protection of individual autonomy in decision-making." Prosser & Keeton, Torts (5th ed), § 96, p 685. The purpose of providing explicit visible warnings is to *reduce,* not eliminate totally a given risk. I do not premise

my belief that a warning could have prevented the instant injury on the notion that pool manufacturers or product manufacturers in general should be responsible for warning of *all* possible injuries. My concerns address only those specific risks and dangers that are manifestly serious while at the same time not obvious. See Prosser, Torts (4th ed), *supra,* pp 649-650. If the presence of an explicit visible warning, which coincidentally is now a standard part of the defendant's marketed pool package, can *reduce* the number of severe pool injuries by *one,* then the purpose of including the warnings has been served.

It should be stressed that the warnings urged necessary by the plaintiffs should, to be effective risk reducers, be explicit, visible, and permanently affixed to the pool itself. The defendant in the present case *had* included warnings in the pool brochure, as well as small warning labels affixable at the pool owner's discretion. However, because the warnings were not permanently affixed to the pool by the defendant manufacturer or the pool owners, they were not assessable by the plaintiff or, for that matter, by any of the invited swimmers present on that day or any other day.[2] Furthermore, the defendant's effort to provide some kind of warning as of the time of this injury, undermines, as a matter of practical policy, the consistency of its argument that the danger was open and obvious.

### CONCLUSION

In affirming the decision of the Court of Appeals,

---

[2] Robert and Dianne Wilcenski, the pool owners, did not appeal the Court of Appeals reversal of summary judgment regarding the plaintiffs' suit against them. Thus, I do not pass on the issues presented in their case.

I would hold that the trial court's grant of the defendant manufacturer's motion for summary judgment was improper upon the basis of the erroneous belief that the obviousness of a risk totally excuses a manufacturer's duty to warn. See *Owens, supra.* Unlike the opinion for reversal, I believe there were several genuine issues of material fact that should have gone to the trier of fact. Specifically, a factfinder should have been allowed to consider and resolve the following questions: (1) whether the defendant's conduct in failing to adequately warn about the risk of crippling injury, was reasonable under the circumstances, see part A; (2) whether the magnitude of quadriplegic injury outweighed the utility of defendant's failure to adequately warn, *Moning, supra;* (3) whether the plaintiff's awareness of the *general* risk of injury was enough to excuse the defendant's duty to warn, *Heatilator, supra;* and (4) whether the risk was necessarily obvious in light of the apparent risk, see *Coleco, supra.*

The above questions provide genuine issues of material fact appropriate for a factfinder. Accordingly, I would affirm the decision of the Court of Appeals.