## MACH v GENERAL MOTORS CORPORATION

Docket No. 51560. Submitted June 1, 1981, at Detroit.—Decided January 5, 1982.

James Mach, a heavy equipment operator and mechanic's assistant, was thrown from the track of a large bulldozer when it began moving forward after he had jumpstarted it. The bulldozer rolled over Mach causing his death. Judith Mach, as administratrix of the estate of James Mach, deceased, filed a wrongful death action against Terex Division of General Motors Corporation, in Wayne Circuit Court, alleging negligence and products liability. Thomas Roumell, J., entered judgment for defendant following a jury verdict of no cause of action. The plaintiff appeals alleging that the trial court erred: (1) in ruling as a matter of law that the defendant owed no duty to the decedent to warn of the potential dangers of jumpstarting the bulldozer in the manner employed; (2) in refusing to allow plaintiff's expert witness to give his opinion on the initial gearshift lever position as well as on why the bulldozer moved forward; (3) in directing plaintiff's counsel to continue during cross-examination of defendant's expert witness before an answer to a question posed by counsel could be elicited from the witness; and (4) in not allowing the plaintiff to call a certain party as a rebuttal witness. *Held:*

1. The trial court was correct in ruling that, on the basis of the evidence presented, the defendant did not owe the plaintiff a duty to warn. The danger involved in jumpstarting a bulldozer while standing on its track in the manner employed by the defendant is open and obvious to all and no duty to warn existed. the trial court did not err in removing the issue of duty to warn from the jury's consideration.

2. The trial court's refusal to allow the plaintiff's expert

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 3 Am Jur 2d, Products Liability § 51.

Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.

[2] 63 Am Jur 2d, Products Liability § 52.

[3] 31 Am Jur 2d, Expert and Opinion Evidence §§ 36-38.

[4] 4 Am Jur 2d, Appeal and Error § 493.

81 Am Jur 2d, Witnesses § 74.

witness to give opinion testimony was predicated on the lack of establishing the underlying facts or data. No abuse of discretion is shown.

3. No error resulted because plaintiff's counsel was directed to proceed during his cross-examination of the defendant's expert witness since the answer sought to be elicited by the plaintiff was irrelevant to the case.

4. The issue of whether the trial court erred in not allowing the plaintiff to call a certain party as a rebuttal witness was not preserved for appellate review since it is not indicated on the record that plaintiff sought to introduce rebuttal testimony or to invoke the court's discretion with respect thereto. No offer of proof was made nor was any objection noted on the record regarding the denial of plaintiff's purported motion.

Affirmed.

1. PRODUCTS LIABILITY — DUTY TO WARN.

A manufacturer of a product is under no duty to warn against its dangers which are open and obvious; the threshold question of whether any duty is owed is one of law for the court to decide.

2. PRODUCTS LIABILITY — DUTY TO WARN — FORESEEABILITY.

A manufacturer's duty to give a warning as to the danger inherent in the use of its product in a certain manner depends upon whether the plaintiff's use of the product and the injury sustained was foreseeable; the crucial inquiries under this test are whether the use made of the product was a common practice and whether the manufacturer was aware of that use.

3. EVIDENCE — EXPERT WITNESSES — DATA — RULES OF EVIDENCE.

The rules of evidence do not require that data underlying an expert witness's opinion or inference be introduced into evidence; the trial court, however, in its discretion, may so require and may also require the expert to disclose the underlying facts or data prior to testifying in terms of opinion or inference (MRE 703, 705).

4. WITNESSES — REBUTTAL WITNESSES — APPEAL.

An issue of whether the trial court erred in not allowing a plaintiff to call a certain person as a rebuttal witness is not preserved for appellate review where the record does not indicate that the plaintiff sought to introduce rebuttal testimony or to invoke the court's discretion with respect thereto or where no offer of proof was made nor any objection noted on the record regarding the denial of the plaintiff's purported motion.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark,* and *Goldsmith, Yaker & Goldsmith,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Mark H. Sutton, Frank Nizio,* and *Terrence E. Haggerty),* and *Otis M. Smith,* General Counsel (by *Douglas E. Brown* and *Keith Landenberger),* for defendant.

Before: Bronson, P.J., and R. M. Maher and F. X. O'Brien,* JJ.

F. X. O'Brien, J. Plaintiff appeals as of right from a jury verdict of no cause of action rendered in defendant's favor. Plaintiff's decedent, a heavy equipment operator and mechanic's assistant, was thrown from the track of a large bulldozer when it began moving forward after he had jumpstarted it. The bulldozer rolled over the decedent, causing his death. Plaintiff filed a wrongful death action against defendant, the manufacturer of the bulldozer, alleging negligence and products liability. We affirm.

The bulldozer had been operating for approximately one and one-half hours on the day the accident occurred. It then stalled. Plaintiff's decedent was informed of this fact and went to the scene to start the engine. With no one in the operator's cab, the decedent climbed onto the left track of the crawler and jumped the starter solenoid with a pair of pliers. This permitted the safety switches of the normal starting method to be circumvented; it also started the engine. Decedent then stood on the track of the bulldozer talking to Russell Pierce, the bulldozer's operator. The bulldozer moved forward and the decedent

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was thrown in front of it. Immediately after the accident, the bulldozer was checked and found to be free of defect. No repairs or corrections were needed or made, and the bulldozer was used on the day following the accident.

Plaintiff first alleges that the trial court erred in ruling as a matter of law that defendant owed the decedent no duty to warn of potential dangers of jumpstarting the bulldozer in the manner employed. Under Michigan law, a manufacturer of a product is under no duty to warn against dangers which are open and obvious. *Fisher v Johnson Milk Co, Inc,* 383 Mich 158, 160; 174 NW2d 752 (1970), *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693, 696-697; 298 NW2d 620 (1980). The threshold question of whether any duty is owed is one of law for the court to decide. *Cf. Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977). The trial court was correct in ruling that on the basis of the evidence presented the defendant owed plaintiff's decedent no duty to warn.

The evidence established that decedent bypassed the normal bulldozer starting system which was operational and used to start the engine that morning. Decedent and Pierce also bypassed the neutral safety lock, although the operator's handbook warned that the lock should be used when the bulldozer was not in operation or its engine stopped. The neutral safety lock is a spring-loaded catch. It firmly holds the gearshift lever in neutral when it is engaged by catching the gearshift lever and mechanically preventing the lever from moving. If the neutral safety lock had been used, it would have locked the transmission in neutral and the bulldozer would not have moved.

Plaintiff's witness, Robert Miller, testified that placing the lever in the neutral safety lock is the

correct way to start the bulldozer and the way he would have done so were he to have jumped the solenoid. Mr. Young, decedent's supervisor called as a witness by plaintiff, also testified that he would have used the neutral lock if he were jumping the solenoid.

Neither decedent nor Pierce set the parking brake prior to jumping the solenoid, although the operator's handbook and a warning plate in the operator's compartment adjacent to the parking brake control warned that the parking brake must be set when the bulldozer was not in operation. Young testified that he would have made sure he had set the parking brake before he jumped the solenoid. The bulldozer would not have moved had the parking brake been set.

The evidence also established that the engine was apparently started by decedent with the throttle opened well beyond the idle position. The throttle was found two-thirds of the way to wide open. The operator's handbook instructed that the throttle was to be set at idle when the engine was started. Young testified that he would have made sure that he had set the throttle at idle before he jumped the solenoid. The bulldozer would not have moved had the throttle lever been positioned near the idle setting.

Decedent started the bulldozer while standing on the track rather than from a remote position. Plaintiff's and defendant's witnesses agreed that decedent could have attached wire leads to the solenoid and then closed a connected switch from a position of safety on the ground.

Decedent remained on the track after the engine started with no one in the operator's compartment. Someone in the operator's compartment could have controlled the bulldozer by using the

throttle, the brakes, the gearshift lever and the steering levers, which served as brakes as well, or the emergency stop control. The operator's handbook warned, "Make sure no one is working on the unit before starting the engine * * *". Decedent's conduct also violated the instruction which his employer gave to its employees concerning standing on bulldozers while no one occupied the operator's compartment.

On the basis of the above evidence it is clear that no duty to warn existed in the instant case. The danger inherent in jumpstarting a bulldozer while kneeling on its track, without using a remote switch, without setting the parking brake, without an operator in the cab at all times, while leaving the throttle open to two-thirds of full throttle, without insuring that the gearshift lever was completely in neutral, or, better still, that the neutral lock mechanism was engaged, and without employing normal starting procedures was a danger open and obvious to all about which no duty to warn existed.

This Court has also held that there exists no duty to warn if the particular use made of the product and the injuries sustained were not foreseeable by the manufacturer. *Thomas v International Harvester Co,* 57 Mich App 79, 81; 225 NW2d 175 (1974). The crucial inquiries under this test are whether the use made of the product was a common practice and whether the manufacturer was aware of that use. Although there was some testimony in the instant case that jumpstarting was an ordinary way of starting the machinery, there was no testimony that the peculiar method of jumpstarting used by decedent was a common method. To the contrary, plaintiff's witnesses all testified that the manner in which they would

have jumpstarted the bulldozer would have been much different from that used by decedent, and that they would have relied upon the safety features built into the machinery, of which they were all aware. Further, there was no evidence that defendant knew, or should have reason to know, that the precise method of jumpstarting used by plaintiff's decedent was common to the trade. Thus, no duty to warn could be imposed under *Thomas, supra.*

Under all possible modes of analysis, the duty to warn was not a part of the applicable standard of conduct with which defendant was required to comply. The trial court properly held that this was the case and did not err in removing the issue of duty to warn from the jury's consideration.

Plaintiff next argues that the trial court erred requiring reversal in refusing to allow plaintiff's expert to give his opinion on the initial gearshift lever position as well as on why the bulldozer moved forward. During the direct examination of plaintiff's expert, counsel asked the witness for his opinion as to whether or not the bulldozer could have moved forward under certain conditions, which counsel indicated were established in the record. Defense counsel objected, claiming that plaintiff's question did not fairly characterize the record. Defense counsel requested that the basis for the witness's opinion be established before the opinion could be given. Thereafter, a brief foundation was laid, to which defense counsel objected as being inadequate. The trial court sustained the objection after hearing arguments from counsel.

The court, in its discretion, may require that the underlying facts or data essential to an opinion or inference be in evidence. MRE 703, *Dayhuff v General Motors Corp,* 103 Mich App 177, 184-185;

303 NW2d 179 (1981). The trial court also has the discretion to require that the expert give the underlying facts or data, whether in evidence or not, prior to testifying in terms of opinion or inference. MRE 705. From the record, it appears that the trial court required plaintiff to satisfy both rules prior to her expert being allowed to give his opinion. The court's refusal to allow an opinion to be given was predicated on the lack of this type of foundation being established. No abuse of discretion resulted.

This Court also notes from the record, however, that the witness was eventually allowed to give his opinion as to the initial gearshift lever position and as to why the bulldozer moved forward. He testified that the lever could have been left outside the neutral groove position and that the bulldozer would not have moved if the lever was in neutral. He indicated that his opinion assumed that the lever was not in the neutral position at the time the bulldozer moved. Thus, were this Court to find that the initial ruling of the trial court was erroneous, such a finding would not form a basis for reversal in light of the fact that the jury was apprised of the evidence. See GCR 1963, 529.1, *Gutowski v M & R Plastics & Coating, Inc,* 60 Mich App 499, 515; 231 NW2d 456 (1975).

Plaintiff next argues that the court erred requiring reversal in directing plaintiff's counsel to "go on" during cross-examination of defendant's expert witness before an answer to a question posed by counsel could be elicited. Plaintiff's argument is without merit. The answer sought to be elicited by plaintiff was irrelevant to the case. MRE 401.

Finally, plaintiff argues that the trial court erred in not allowing her to call Pierce as a rebuttal witness. Plaintiff contends that Pierce's

testimony would have contradicted that of defendant's expert witness. Nowhere on the record is it indicated that plaintiff sought to introduce rebuttal testimony or to invoke the court's discretion with respect thereto. Moreover, no offer of proof was made nor was any objection noted on the record regarding the denial of plaintiff's purported motion. Thus, the issue has not been preserved for appellate review. *Taylor v Lowe,* 372 Mich 282, 283-284; 126 N.W2d 104 (1964), *Olweean v Wayne County Road Comm,* 385 Mich 698, 703; 190 NW2d 108 (1971).

Affirmed.