BULLOCK v GULF & WESTERN MANUFACTURING

Docket No. 61592. Submitted March 3, 1983, at Detroit.—Decided June 24, 1983.

John Bullock was injured while operating a punch press. He brought an action against Gulf & Western Manufacturing, the successor corporation of the manufacturer of the press, which was built in 1947. Plaintiff alleged that the defendant had manufactured an unsafe product and had negligently failed to warn him of the danger. At the close of plaintiff's proofs the Wayne Circuit Court, Maureen P. Reilly, J., granted the defendant's motion for a directed verdict. Plaintiff appeals. *Held:*

1. A plaintiff who bases a products liability case on a negligence theory must make out a prima facie case establishing that the defendant breached its duty to use reasonable and ordinary care to plan or design the product so that it is reasonably safe for the purposes for which it is intended. Plaintiff's evidence established that the press itself was harmless because there was no point of operation until the press was assembled with a die, at which point there are several ways to guard the press. Therefore, the press as supplied by the manufacturer was reasonably safe for its foreseeable uses. The directed verdict on the defective product claim was proper.

2. The plaintiff's testimony established that he was an experienced operator of the machine and was aware of the dangers associated with operating the machine. Therefore, there was no duty on the part of the manufacturer to warn the plaintiff of the dangers. The directed verdict on the failure to warn claim was proper.

Affirmed.

References for Points in Headnotes

[1, 2] 75 Am Jur 2d, Trial §§ 491, 492.

[2] 63 Am Jur 2d, Products Liability § 23.

[3] 63 Am Jur 2d, Products Liability §§ 63-65.

[4] 63 Am Jur 2d, Products Liability § 52.

[5] 63 Am Jur 2d, Products Liability § 51.

Duty of manufacturer to equip product with safety device to protect against patent or obvious danger. 95 ALR3d 1066.

1. MOTIONS AND ORDERS — DIRECTED VERDICT.

> A trial court, in ruling on a defendant's motion for a directed verdict, is to view the evidence in the light most favorable to the plaintiff and determine whether the evidence establishes a prima facie case against the defendant; the motion should be granted only where there is no question for the trier of fact, that is, where all reasonable men would agree that there has been an essential failure of proof.

2. PRODUCTS LIABILITY — DIRECTED VERDICT.

> A plaintiff in a products liability case, in order to avoid a directed verdict in the defendant's favor, is obligated to produce evidence reasonably leading to the conclusion that the defendant supplied a product which was defective and that the defect caused the plaintiff's injury.

3. PRODUCTS LIABILITY — NEGLIGENCE — DUTY OF MANUFACTURER.

> A products liability claim based on a negligence theory must make out a prima facie case establishing that the manufacturer breached its duty to use reasonable and ordinary care under the circumstances in planning or designing the product so that it is reasonably safe for the purposes for which it is intended.

4. PRODUCTS LIABILITY — DEFECTIVE PRODUCT — FORESEEABLE USE.

> A product is defective if it is not reasonably safe for its foreseeable uses.

5. PRODUCTS LIABILITY — NEGLIGENCE — FAILURE TO WARN.

> A manufacturer may be liable in negligence for failure to warn purchasers or users of its product about dangers associated with the intended use, as well as with foreseeable misuse, of the product; however, where the danger is open and obvious to all users or where the specific dangers are fully known to the plaintiff at the time the injury occurred there is no duty to warn.

*Cockrel, Cooper & King* (by *Anthony J. Vigliotti*), and *David J. Cooper,* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *Ivin E. Kerr*), and *Gromek, Bendure & Thomas* (by *Mark R. Bendure* and *Daniel J. Wright*), of counsel, for defendant.

Before: Beasley, P.J., and V. J. Brennan and Wahls, JJ.

Per Curiam. Following a jury trial in this products liability action, the trial court granted defendant's motion for a directed verdict. Plaintiff appeals as of right.

On October 26, 1976, plaintiff was injured when a ram descended upon his left hand as he was changing a broken punch in the course of his employment as a press operator at Detroit Steel Products (hereafter referred to as DSP). The machine involved was a Bliss 23M punch press, which was manufactured and sold in July of 1947. Defendant Gulf & Western is Bliss's successor company. Plaintiff alleged that defendant had manufactured an unsafe product and had negligently failed to warn him of its danger.

At trial, plaintiff challenged the safety design of the Bliss press on the ground that it required a safety device (guard) which was not provided by defendant. Plaintiff further alleged that the electrical interlock guard which was supplied by DSP was not adequate; defendant should have provided a mechanical interlock guard when it manufactured and delivered the press. Plaintiff alleged that his injury was foreseeable and that it was economically and practically feasible for defendant to have provided a mechanical interlock guard in 1947 when the press was manufactured.

At the close of proofs, defendant moved for a directed verdict on the grounds that plaintiff had failed, as a matter of law, to establish a prima facie showing of a defect in the punch press attributable to defendant or that the absence of warning labels was a cause of plaintiff's injury. Defendant asserted that the press was harmless when it left

defendant's control and that the hazard underlying plaintiff's injury was created by DSP, the user, when it added necessary components to create a point of operation. Defendant concluded that it would be unreasonable to impose upon it a duty to safeguard the point of operation. The trial court granted defendant's motion for a directed verdict on both the defective product and failure to warn theories.

We address first plaintiff's argument that the trial court erred in directing a verdict in favor of defendant on the issue of whether there was a defect in the power press manufactured by defendant which caused plaintiff's injuries.

In ruling on a motion for directed verdict, the trial court is to view the evidence in the light most favorable to the plaintiff and determine whether the evidence establishes a prima facie case against the defendant. The motion should be granted only when there is no question for the trier of fact; that is, where all reasonable men would agree that there has been an essential failure of proof. *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708, 712; 202 NW2d 727 (1972), *lv den* 388 Mich 812 (1972); *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975).

In products liability cases, in order to avoid a directed verdict in the defendant's favor, the plaintiff is obligated to produce evidence reasonably leading to the conclusion that the defendant supplied a product which was defective and that this defect caused the plaintiff's injury. *Snider, supra,* p 713; *Caldwell, supra,* pp 410-411.

When the plaintiff bases his or her claim on a negligence theory, as opposed to one sounding in implied warranty, he or she must make out a prima facie case establishing that the manufac-

turer breached its duty to use "reasonable and ordinary care under the circumstances in planning or designing his product so that it is reasonably safe for the purposes for which it is intended". *Farr v Wheeler Manufacturing Corp,* 24 Mich App 379, 386; 180 NW2d 311 (1970), *lv den* 385 Mich 773 (1971).

Upon review of the evidence presented at trial, we fully agree with the trial judge that a directed verdict was proper. Plaintiff failed to produce evidence reasonably supporting the conclusion that the press supplied by Bliss was defective. Nor, for that matter, did plaintiff establish that his injury was caused by any defect in the press. There was no prima facie case which required submission to the jury.

Initially, we note that plaintiff is incorrect in asserting that the trial judge held that *Fredericks v General Motors Corp,* 411 Mich 712; 311 NW2d 725 (1981), had abrogated the manufacturer's duty to exercise care for safety in designing its products. The trial judge merely stated that *Fredericks* was a part of the rationale for her decision.

Plaintiff is correct in stating that, for the most part, *Fredericks* deals with the issue of negligent entrustment in the context of an employee injured while operating a power press during the course of his employment. Defendant in that case was the owner of the die set being used at the time of injury. The plaintiff alleged that defendant negligently entrusted the die to his employer without a safety guard, and that the unguarded die was "defective". After holding that plaintiff did not prove negligent entrustment, however, the Court added:

"As an alternative to negligent entrustment plaintiff

contends that an unguarded die is unreasonably dangerous and should, therefore, be considered 'defective', giving rise to products liability on the part of the supplier for personal injuries sustained by its use. Plaintiff argues that his injury was a result of the absence of a guard on this particular die, that General Motors could have provided a guard, and that the failure to provide a guard should result in liability. Plaintiff's injury may well have resulted from the absence of guarding; however, this accident might have been prevented by guarding on the press instead of the die. There are numerous methods of guarding the point of operation on a power press. Die guards are merely one.

"A product is defective if it is not reasonably safe for its foreseeable uses. An unguarded die may be used in a reasonably safe manner in a guarded press or in an unsafe manner in an unguarded press. At the time of plaintiff's injury 1967 PA 282 required that '[e]ach employer shall establish and maintain conditions of work which are reasonably safe and healthful for employees'. In light of this statutory duty imposed on Manistee Drop Forge we cannot hold as a matter of law that it was foreseeable to defendant that the product it supplied would be used in an unsafe manner rendering it defective." *Fredericks, supra,* pp 720-721.

As in *Fredericks,* defendant herein merely supplied one component of the entire metal forming system on which plaintiff was injured; that being the punch press. Evidence at trial established that this component is, by itself, harmless, because there is no point of operation until it is assembled with a die. After that is done, as in *Fredericks,* there are many ways to guard the point of operation. However, until the entire system is assembled, the punch press is "reasonably safe for its foreseeable uses" as a multi-purpose punch press. In light of the fact that plaintiff's employer, DSP (the owner of the factory), was under the same statutory obligation to establish and maintain safe

working conditions for plaintiff, MCL 408.1011; MSA 17.50(11), we conclude that it was not foreseeable to defendant that DSP would, if indeed it did, use the product it supplied in an unsafe manner, rendering it defective.

Plaintiff argues that, even though DSP did provide an electrical interlock guard at the point of operation when the system was assembled, defendant should have provided a mechanical interlock guard when the power press was manufactured and delivered. It was established that such a guard was available and feasible in 1947 when the power press in question was manufactured. However, testimony also established that, because of the limitations imposed by the guarding devices, such a guard placed on the punch press before it is assembled into the entire system would turn what was intended as a multi-purpose punch press into a single-purpose press. The size, shape, and type of guard would have to be selected with the ultimate use of the metal forming system in mind. We agree that this would be an unreasonable burden to impose upon a manufacturer who has been "hired" to supply a multi-purpose press. Also see *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982); *Antcliff v State Employees Credit Union,* 95 Mich App 224; 290 NW2d 420 (1980), *aff'd* 414 Mich 624; 327 NW2d 814 (1982).

Plaintiff also asserts that the trial court erred in directing a verdict in favor of defendant on the issue of whether defendant had a duty to warn plaintiff of any dangers associated with the use of the power press. A manufacturer is liable in negligence for failure to warn the purchasers or users about dangers associated with intended use, as well as those associated with foreseeable misuse. *Antcliff v State Employees Credit Union,* 414 Mich

624, 637-638; 327 NW2d 814 (1982). Where, however, the danger is open and obvious to all users of the product, or where the specific dangers are fully known to the plaintiff at the time the injury occurred, there is no duty to warn. *Mach v General Motors Corp,* 112 Mich App 158; 315 NW2d 561 (1982); *Graham v Ryerson,* 96 Mich App 480; 292 NW2d 704 (1980), *lv den* 410 Mich 858 (1980).

In this case, plaintiff established by his own testimony that he was aware of the dangers associated with the point of operation of the machine he was working with and that he was aware of the dangers involved in the residual motion of the ram after the power is shut off and one is changing a punch. Plaintiff was an experienced operator of this machine. There was, therefore, no duty on the part of defendant to warn plaintiff of the dangers involved.

Affirmed.