**John ESCHENBURG, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANS-PORTATION CORPORATION, f/k/a International Harvester Corporation, Defendant.**

Civ. A. No. 90–40303–FL.

United States District Court,
E.D. Michigan, S.D.

June 17, 1993.

Jeffrey T. Stewart, Birmingham, MI, for plaintiff.

Craig L. John and Joseph H. Hickey, Dykema Gossett, Bloomfield Hills, MI, for defendant.

### SCHEDULING ORDER

NEWBLATT, District Judge.

Trial is set for July 12, 1993 at 8:00 a.m. Oral argument on the motions in limine will be held at 7:30 a.m. that morning. For now, the Court's previous rulings on the motions will stand.

### Memorandum Opinion and Order

Pending before the Court is Defendant's Motion to Dismiss and for Summary Judgment as to Count III, which combines Plaintiff's failure to warn claim and breach of duty to recall. This motion is GRANTED in part and DENIED in part.

### FACTS

This case concerns an accident involving a type of farm machinery known as a combine.[1] On October 13, 1989, Randall Eschenburg, plaintiff's uncle, was cleaning excess grain from the grain tank and vertical unloading auger of the International Harvester Co. Model 1480 Combine owned by Eschenburg farms. Amended Complaint ¶ 5. The combine's engine was running, and the access door at the base of the vertical unloading auger was open.

Plaintiff John Eschenburg saw his uncle cleaning the combine, walked up to the machine, squeezed himself into the small area between the left front tire and the body of the combine and, without warning his uncle that he was there, reached up seven feet into the previously opened access door of the auger and began removing wet corn. John Eschenburg Dep. 81–84.

While Plaintiff was removing the wet corn, his uncle returned to the control cab and engaged the auger while Plaintiff's hand was inside the auger. Randall Eschenburg Dep. 63. Both Plaintiff and his uncle had several years of exposure to the operation of farm equipment at the date of the accident.

### I. FAILURE TO WARN

Defendant filed a motion under Fed. R.Civ.P. 12(b)(6) and 56. Navistar submits that no set of facts will support Plaintiff's allegations based on breach of failure to warn at the time of sale or any time post-sale when (i) the danger is open and obvious, (ii) the injured party has knowledge of the danger or (iii) the injured party or his employer is a sophisticated user. Navistar also contends, for the Rule 56 motion, that because plaintiff and his uncle were trained farmers with knowledge of the combine's danger, summary judgment is appropriate.

The Court reviews these motions under the established standards for considering Rule 12(b)(6) motions, *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989) and Rule 56 motions, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

### A. Open and Obvious Danger

■ The first question is whether this accident falls under the open and obvious danger doctrine, which as a matter of law, requires no warning in accidents concerning simple products. *Glittenberg v. Doughboy*, 441 Mich. 379, 491 N.W.2d 208, reh'g. den., 441 Mich. 1202 (1992). Determination of the obvious character of the danger associated with a product is based on the perceptions of the ordinary user of the product. *Glittenberg*, 441 Mich. at 392, 491 N.W.2d 208.

In *Glittenberg, supra*, the Michigan Supreme Court held that the manufacturer of a shallow pool need not post a warning sign that diving is dangerous.

In discussing the applicability of the open and obvious doctrine to a shallow pool, the *Glittenberg* court quoted the "seminal case" of *Jamieson v. Woodward and Lothrop*, 247 F.2d 23 (D.C.Cir.), cert. denied, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957):

A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash or a stove that will not burn a finger. The law does not require [a manufacturer] to warn of such common dangers.... [W]here a manufactured article is a simple thing of universally known parts or mechanism, the only danger being not latent but obvious to any possible user, if the article does not break or go awry, but injury occurs through mishap in normal use, the article reacting in its normal and foreseeable manner, the manufacturer is not liable for negligence.

What follows below is a summary version.

---

1. The facts in this case are set out in an opinion reported at 142 F.R.D. 296 (E.D.Mich.1992).

441 Mich. 379 at 391–92, 491 N.W.2d 208. A combine is *not* a simple thing of universally known parts or mechanism. Rather, it is a complex device, and there are several different parts that could cause harm.

There are two reasons why the courts limit the open and obvious danger rule to simple products. The operation of simple products is likely to be understood by most users. Furthermore, the simpler the product, the less likely that one will forget what one already knows in the back of one's mind but is likely to forget. For instance, many people use knives carelessly at least once or twice in their lives, resulting in a cut. But that careless use requires a conscious abnegation of the obvious properties of the knife, that it is sharp so it can cut.

A shallow swimming pool is slightly farther on the continuum of complexity in that some swimming pools are deep and are therefore safe for diving. While the user of a shallow pool could possibly forget that the pool is shallow, the shallow pool's nature "telegraphs the precise warning" that diving is dangerous. *Glittenberg,* 441 Mich. at 394, 491 N.W.2d 208.

The combine, however, is considerably more complex than a swimming pool. It employs a combination of several different machines, each of which has several different parts. A typical user must remember an assortment of dangers associated with different parts of the combine; for instance, multiple parts of the combine can injure people who are too close to them; a person could be run over by the combine or fall out of the combine cab. Defendant notes that one Michigan court of appeals case held a bulldozer accident subject to the open and obvious danger doctrine. In that case, however, the plaintiff's decedent sat in front of the bulldozer, while the throttle was on and jump-started the bulldozer. *Mach v. G.M.C.,* 112 Mich.App. 158, 315 N.W.2d 561 (1982). His actions were analogous to jump-starting a car from the front while it is "in drive" and a brick is on the gas pedal.

The bulldozer acted the way any motorized vehicle acts when powered and in drive: it moved forward. A person does not require any knowledge of bulldozers to know that if it were set to move forward with the power on, and he provided it with power, it would move forward. In fact, unless he were unusually agile, it would be difficult for a plaintiff to avoid injury.

In the case at bar, however, Plaintiff had no expectation that he would be mauled by the combine. He checked on the auger while it was not moving. Normally, people are not injured by that activity. It required the independent action of another individual for the accident to occur. *Mach,* then, does not suggest that the open and obvious doctrine applies to a combine auger accident.

This is not to say that users do not have a duty to ensure that no one is cleaning the auger before starting it. Nor is it to say that the accident in the case at bar does not sound "obvious" after the fact. Indeed, as the Fifth Circuit Court of Appeals noted in consideration of the same issue involving a John Deere Titan series combine, "the risk that the auger may be engaged whenever the engine is running is a matter of common sense . . ." *Melton v. Deere & Co.,* 887 F.2d 1241 (5th Cir.1989). That court, in a 2–1 decision found the risk that an auger could be turned on when the engine is running to be open and obvious under Mississippi tort law and directed a verdict for defendant. In that case, however, the Deere tractor contained a warning that stated:

WARNING

To avoid bodily injury from turning auger, stop engine and remove start key before opening clean out door.

887 F.2d at 1242. *Coffman v. Austgen's Elec. Inc.,* 437 N.E.2d 1003, 1008 (Ind.App. 1982), cited by Defendant, allowed a jury to determine whether a combine auger accident was open and obvious. *See also, Burke v. Deere & Co.,* 780 F.Supp. 1225, 1243 (S.D.Iowa 1991) (denying j.n.o.v. for manufacturer of combine involving similar auger accident where defendant contended danger was open and obvious. In that case, the court upheld a jury award of $650,000 for actual damages, reduced by 40% comparative negligence to $390,000. The court reduced the punitive damages award from $50,000,000 to $28,000,000.).

A reasonable jury could find a division of negligence between the parties in this case. However, it is wrong to stretch the parameters of the open and obvious doctrine, limited in its language to "simple tools," *Glittenberg*, 441 Mich. at 394, 491 N.W.2d 208, to fit a machine as complex as a combine merely because a reasonable jury could find comparative negligence. To find an open and obvious danger, the court would have to eviscerate the simple tools language that the Michigan Supreme Court used only one year ago. This, the Court will not do.

The Court does not find it necessary either to accept or reject Judge Zatkoff's definition of complex products in *Raines v. Colt Ind., Inc.*, 757 F.Supp. 819, 824 (E.D.Mich.1991).[2]

### B. *Knowledge of the Danger*

■ Defendant's second argument is that because Plaintiff had actual knowledge of the danger, there was no duty to warn him. *Bullock v. Gulf & Western*, 128 Mich.App. 316, 323, 340 N.W.2d 294 (1983). The extent of Plaintiff's knowledge of the danger appears significant however. *Bullock* actually states, "where the specific dangers are *fully* known to the plaintiff *at the time* the injury occurred, there is no duty to warn." *Id.* (emphasis added). In this case, a factual question remains as to the extent to which the plaintiff was aware of the danger at the time that the accident occurred. Aff. of John Eschenburg.

*Ferlito v. Johnson & Johnson Products, Inc.*, 771 F.Supp. 196, 200 (E.D.Mich.1991) (Gadola, J.), *aff'd. without opinion*, 983 F.2d 1066 (6th Cir.1992) is not to the contrary. The court in that case directed a verdict for a defendant who manufactured cotton batting that plaintiff wore as a halloween costume to dress as a lamb. The cotton contained no flammability warning, and plaintiff suffered severe burns after the costume ignited when Plaintiff lit a cigarette. The court found that the use of the material for costuming was unforeseeable, and the plaintiff failed to present evidence that a warning would have altered his behavior.

Judge Gadola also stated that, "The jury's finding of comparative negligence necessarily means that it concluded that plaintiffs knew or should have known of the flammability of cotton batting. If that was the jury's conclusion, the [defendant] had no duty to warn and the jury's verdict ignored the court's instructions." 771 F.Supp. at 201.

This Court disagrees with the analysis as to that last point. For it necessarily follows from that argument that whenever there is a finding of comparative negligence in a duty to warn case, then a directed verdict is appropriate. The Court does not think that this result comports with Michigan case law.

In the course of his opinion, Judge Gadola also recited the rule of law from *Bullock, supra*, requiring that the specific dangers be "fully known to the plaintiff at the time the injury occurred." The Court agrees that this constitutes the rule in Michigan. *Cf., Antcliff v. State Employees Credit Union*, 414 Mich. 624, 632 n. 6, 327 N.W.2d 814 (1982).[3] The extent of the knowledge that Plaintiff had of the danger of cleaning the auger with the engine running at the time of the accident remains an issue to be tried before the jury in this case. *See also, Burke v. Deere & Co.*, 780 F.Supp. at 1243 (denying j.n.o.v. where court submitted the issue of failure to warn to the jury and the plaintiff had knowledge of the danger).

### C. *Sophisticated User*

■ Defendant also contends that because plaintiff and his uncle were sophisticated users, the manufacturer had no duty to warn,

**2.** In that case, Judge Zatkoff stated, "First, generally, complex products are very mechanized, thus eliminating the user's control over the product. Second, complex products have a tendency to require a method of operation that exposes the user or operator to injury." 757 F.Supp. at 824. This opinion preceded the Michigan Supreme Court's final opinion in *Glittenberg*, however.

**3.** Footnote 6 states:

Since the conduct of a person of reasonable prudence is always dependent upon proof of the circumstances as they existed at the time of the defendant's conduct, a standard of care issue is to this extent a matter for the trier of fact. That is, the trier of fact would determine if the defendant acted or failed to act as would a person of reasonable prudence given the circumstances proved.
*Antcliff*, 414 Mich. 624, 632 n. 6, 327 N.W.2d 814.

*Antcliff, supra. Antcliff* stated narrowly that, "We hold only that on the facts of *this* case *this* defendant was under no duty to instruct on or give directions for the safe rigging of its product." 414 Mich. at 626, 327 N.W.2d 814 (emphasis in original).

The court also articulated Michigan's general rule for the necessity of warnings, "In sum, our prior decisions support a policy that a manufacturer's standard of care includes the dissemination of such information, whether styled as warnings or instructions, as is appropriate for the safe use of its product." *Id.*, at 638, 327 N.W.2d 814.

*Antcliff* concerned a failure-to-warn products liability suit brought by a scaffold rigger against the manufacturer of a scaffold sold to Antcliff's employer, Austin's Painters, a "professional in the construction trade and necessarily highly experienced in the use and rigging of scaffolding equipment." 414 Mich. at 632, 327 N.W.2d 814. The accident occurred because Antcliff and a co-employee had rigged the scaffold incorrectly. *Id.*, at 639, 327 N.W.2d 814. At trial, no defects were found in the scaffolding, and the judge instructed the jury that the manufacturer had no duty to warn or provide instructions as to the scaffold's use. *Id.*, at 628, 327 N.W.2d 814.

The manufacturer's representative "stated that he likely had discussed rigging practices with representatives of Austin's Painters, ..." *Id.*, at 634, 327 N.W.2d 814. The court appeared to find the relationship between the manufacturer and Austin Painters to be significant, in that Austin's Painters' expertise made it reasonable to suppose that they would take responsibility for training the plaintiff in the use of the product. *Id.*, at 632–35, 327 N.W.2d 814. The Michigan Court of Appeals has developed an alternate basis for this principle; that it is unforeseeable from the standpoint of the manufacturer how the employer will use a device designed to accommodate multiple purposes. *Reeves v. Cincinnati, Inc.*, 176 Mich.App. 181, 189, 439 N.W.2d 326 (1989). That argument does not appear applicable to the case at bar, where the cleaning of the auger is an expected use of the product.

Secondly, the *Antcliff* court relied on the fact "that scaffold workers did their own rigging, and that choice of suspension technique was largely a matter of personal preference." 414 Mich. at 633, 327 N.W.2d 814. The court found the high skill level among journeyman painters as a reason not to require warnings when "the manufacturer affirmatively and successfully limits the market of its product to professionals. In such a case, the manufacturer should not be burdened with the often difficult task of providing instructions on how to properly perform the basic operation." 414 Mich. at 640, 327 N.W.2d 814 (footnote omitted).

Phrasing the policy more generally, the court stated, "There are countless skilled operations such as the rigging of scaffolding, which involved otherwise non-dangerous products in potentially dangerous situations. A manufacturer of such a product should be able to presume mastery of the basic operation." *Id.*

Defendant contends that professional farming falls under the same category as professional painting, in that a manufacturer should be able to rely upon farmer purchasers to use combines with skill and to educate employees how to use combines with skill.

The court disagrees. Farming is not a profession in which one is apprenticed and trained to a standard such as journeyman or master farmer. While farm employees may perform particular tasks under supervision, they do not automatically go through a standardized training process by which they become trained in the use of farm equipment. Certainly, *Antcliff* does not apply to a family farm operation, such as in the case at bar.

For these reasons, the motion is DENIED.

## II. DUTY TO RECALL

Plaintiff wishes to argue that Defendant is negligent based upon the failure of the Defendant to recall and repair plaintiff's combine. Defendant has filed a separate motion to dismiss contending that there is no duty under Michigan law. Plaintiff finds such a duty inherent in *Comstock v. General Motors*, 358 Mich. 163, 99 N.W.2d 627 (1959).

Plaintiff contends that *Comstock* makes a manufacturer responsible for products after

the date the product leaves the manufacturer's control so long as the product was defective when the manufacturer released it. He admits, however, that *Comstock* does not specifically require this remedy, nor has any Michigan case since *Comstock* interpreted the case in that way.

This Court cannot find that the Michigan Supreme Court would interpret a thirty-four year old case in this new manner with such obviously significant consequences. Therefore, the Court holds that Plaintiff cannot argue to the jury that Defendant had a duty to repair or recall the product after it left the hands of the manufacturer.

The Motion is GRANTED to this degree, and it is therefore GRANTED in part and DENIED in part.

SO ORDERED.