GREGORY v CINCINNATI, INC

Docket No. 135587. Submitted March 16, 1993, at Lansing. Decided November 15, 1993, at 9:50 A.M. Leave to appeal sought.

Michael Gregory brought a products liability action in the Wayne Circuit Court against Cincinnati, Inc., and Addy-Morand Machinery Company, seeking damages for injuries to his hand caused when a press manufactured by Cincinnati and sold by Addy-Morand in 1964 to the plaintiff's employer cycled after the plaintiff accidentally depressed the operating pedal while his hand was in the press. At trial, over the defendants' continuing objections, the plaintiff was allowed to present evidence supporting his claim that the defendants had a continuing duty to cure any defects in the machine that became apparent after the machine had been sold. The defendants moved for a directed verdict with respect to the continuing-duty claim on the basis that the theory of continuing duty is not recognized in Michigan. The trial court, J. Phillip Jourdan, J., denied the motion, stating that the plaintiff had produced sufficient evidence to support the theory. The continuing-duty theory was argued to the jury, the jury was instructed concerning that theory, and the jury returned a substantial verdict in favor of the plaintiff. The defendants appealed.

The Court of Appeals held:

1. Whether a legal duty exists is a question of law that the court must decide. The trial court erred in permitting the plaintiff to present proofs and argue to the jury concerning the continuing-duty theory. In Michigan, a manufacturer of goods is not legally obligated to repair a product that has been sold so as to bring it into compliance with safety standards that are adopted after the sale of the product.

2. The error resulting from the presentation at trial of evidence and arguments concerning the continuing duty of the defendants to make alterations to the press after it was sold in

REFERENCES

Am Jur 2d, Appeal and Error §§ 776, 783, 810, 813, 816; Products Liability §§ 289, 294.

See ALR Index under Degree and Standard of Care; Harmless and Prejudicial Error; Instructions to Jury.

order to cure safety defects that were discovered after the sale and from the submission of that theory of recovery to the jury requires that the judgment be reversed and the case remanded for retrial.

3. Because there was absolutely no evidence establishing a basis of liability against Addy-Morand other than derivative liability resulting from its status as the seller of Cincinnati's press, the harm done by the submission of the continuing-duty theory to the jury was equally injurious to Addy-Morand and reversal and remand with respect to that defendant is also required.

4. On retrial, the court may allow the plaintiff's evidence concerning accidents that took place after the sale of the subject press to show that the defendants knew of the latent defect, but that evidence may be admitted only to support the theory that liability arose from the failure of the defendants to give proper warning of the defect.

Reversed and remanded for a new trial.

MURPHY, J., dissenting, stated that the judgment should be affirmed, because the court accurately instructed the jury with respect to the defendants' duty and appropriately left to the jury the determination of what actions of the defendants would have been reasonable under the circumstances.

1. PRODUCTS LIABILITY — DUTY TO REPAIR — EMERGING SAFETY STANDARDS.

   A manufacturer of goods is not legally obligated to repair a product that has been sold so as to bring it into compliance with safety standards that are adopted after the sale of the product.

2. PRODUCTS LIABILITY — DUTY TO REPAIR — HARMLESS ERROR.

   It is error for a court to permit the presentation of evidence and oral argument and to instruct a jury that a manufacturer of goods has a continuing duty to repair a product that has been sold so as to bring it into compliance with safety standards adopted after the sale of the product; the admission of such evidence and argument, when coupled with a jury instruction indicating a continuing duty to make such repairs, is inconsistent with substantial justice and cannot be said to be harmless error.

*Allen T. Eaton* and *David T. Smorodin* pro hac vice, and *Kathleen Wilson,* for the plaintiff.

*Harvey, Kruse, Westen & Milan* (by *Dennis M. Goebel* and *Steven D. Brock*), for the defendants.

Before: DOCTOROFF, C.J., and SAWYER and MURPHY, JJ.

DOCTOROFF, C.J. Defendants appeal from a September 5, 1990, judgment entered in favor of plaintiff in the amount of $1,000,000, following a jury trial in the Wayne Circuit Court.[1] On appeal, defendants contend that the jury was improperly allowed to consider certain evidence and was improperly instructed regarding the theory of the "continuing duty" of a manufacturer to modify a product following its production and sale. We reverse the verdict and remand for a new trial.

On May 19, 1986, plaintiff was employed by Sheet Metal Industries and was operating a brake press manufactured by Cincinnati, Inc., and distributed by Addy-Morand Machinery Company. The press, sold to plaintiff's employer in 1964, was operated by a foot pedal and was designed to bend metal into various shapes. Plaintiff was operating the machine when he dropped a piece of metal onto the floor, bent over to retrieve it with his right hand, placed his left hand in the "point of operation," and apparently depressed the foot pedal, causing the machine to cycle. Plaintiff's left hand was crushed severely by the machine.

Plaintiff filed this products liability suit against defendants, claiming that the machine was designed defectively and also that defendants had failed to place the necessary warnings on the machine to inform the operator of an unreasonable risk of injury. During the course of trial,

[1] Plaintiff's delayed application for leave to cross appeal was granted, however plaintiff has failed to perfect his cross appeal by filing a brief with this Court.

plaintiff claimed that defendants had a "continuing duty" to cure defects in the machine that became apparent after the machine had already been sold. Defendants moved in limine to prohibit plaintiff from introducing any evidence relevant to this theory and further asked that the court preclude plaintiff from arguing the theory to the jury. The court indicated that it would rule on the matter as trial progressed and would exclude any objectionable evidence.

The press at issue in this case is referred to as a general purpose brake press. The press is operated by use of a foot pedal that engages the clutch when a certain amount of pressure is exerted, causing the "ram" to come down upon the material and bend it into conformity with whatever die has been placed in the machine. The area where the metal is placed in preparation for bending is referred to as the "point of operation." Plaintiff's theory at trial was that the machine that was manufactured and sold by defendants was defective because it had no guard surrounding the point of operation and had no guard to prevent unintentional engagement of the foot pedal. Defendants acknowledged that the lack of a guard at the point of operation constituted a threat of injury, but asserted that the machine could not perform its intended functions with the proposed guard systems that existed at the time the machine was designed and manufactured. In addition, defendants asserted that plaintiff's employer was offered other models of the machine that were operated with foot switches or dual palm controls, but plaintiff's employer chose the model operated by the foot pedal.

Beginning with plaintiff's opening argument, and continuing throughout the entire trial, plaintiff was permitted to argue and introduce evidence

of the theory of continuing duty. At the close of plaintiff's proofs, defendants moved for a directed verdict, arguing that there was no *legally* recognized continuing-duty theory in Michigan and asking the court to remove the theory from the jury's consideration. The court refused, stating that plaintiff produced sufficient evidence to support the theory. Following defendants' proofs, plaintiff argued the theory extensively to the jury and requested a special instruction regarding the theory, which was given by the court after some modification. The jury found that plaintiff had suffered $1,500,000 in damages. However, the jury also concluded that plaintiff was 33⅓ percent negligent, thereby reducing his recovery to $1,000,000.

Defendants' sole argument in this appeal is that the court committed error warranting reversal in allowing plaintiff to present the theory of continuing duty to the jury. We agree.

Whether a manufacturer owes a duty to a party is a question of law to be decided by the court. *Glittenberg v Doughboy Recreational Industries (On Rehearing),* 441 Mich 379, 386; 491 NW2d 208 (1992). A manufacturer has a duty to design its products in such a manner as to eliminate any unreasonable risk of foreseeable injury. *Prentis v Yale Mfg Co,* 421 Mich 670, 692-693; 365 NW2d 176 (1984); *Shipman v Fontaine Truck Equipment Co,* 184 Mich App 706, 711; 459 NW2d 30 (1990). The conclusion that a duty is owed by one to another represents a judgment, as a matter of policy, that the latter is entitled to protection from the former's conduct. *Antcliff v State Employees Credit Union,* 414 Mich 624, 631; 327 NW2d 814 (1982). At least one scholarly legal article has recognized that a manufacturer owes no duty to its consumers to modify products that already have

been sold so as to bring them current with state-of-the-art safety features. See note, *The manufacturer's duty to notify of subsequent safety improvements,* 33 Stanford L R 1087, n 2 (1981).

In order to sustain a claim of products liability, a plaintiff may opt to show that there was a defect in a product's design or that the manufacturer failed to warn of a risk inherent in the product's design. The focus of a design-defect case is on the quality of a manufacturer's decision in light of the prevailing standards and state of technology in existence at the time the product was designed. See Prosser & Keeton, Torts (5th ed), § 99, p 701; *Prentis, supra* at 687. In a design-defect case, a plaintiff may proceed under a theory of negligence or breach of warranty. *Id.* at 693. In order to sustain a cause of action, a plaintiff is obligated to prove that a product itself is actionable—that there is something wrong with the product that makes it dangerous. *Id.* at 683. With regard to a failure-to-warn claim, a manufacturer is considered negligent if it fails to warn a purchaser about dangers associated with the intended use of the product as well as those dangers associated with foreseeable misuse. *Antcliff, supra* at 637-638; *Bullock v Gulf & Western Mfg,* 128 Mich App 316, 322; 340 NW2d 294 (1983). A manufacturer may also have a duty to warn of latent defects of which it has knowledge, even though the product has already been placed into the stream of commerce. *Comstock v General Motors Corp,* 358 Mich 163, 177-178; 99 NW2d 627 (1959).

As a general matter, evidence of prior accidents is admissible to show notice of the defect or to show that the defect, in fact, existed. *Freed v Simon,* 370 Mich 473, 475; 122 NW2d 813 (1963); *Wheeler v Grand Trunk W R Co,* 161 Mich App 759, 762; 411 NW2d 853 (1987). In addition, safety

standards in existence before the time that the manufacturing took place may be admitted to evaluate the design decision. *Shears v Pardonnet,* 80 Mich App 358, 364; 263 NW2d 373 (1977). The rationale behind the rule limiting admissibility of the safety standards to premanufacture standards is that subsequent standards may reflect a new consensus in the industry, rather than a codification of a prevailing view in the industry at the time the product was manufactured. *Id.*

In this case, the trial court erred in allowing plaintiff to introduce evidence and argument in support of the continuing-duty theory. In his opening statement, plaintiff's counsel stated as follows:

> Their case boils down to a sacred issue, and the plaintiffs [sic] expect the evidence to show that the defendant Cincinnati Machine had a duty to fix the machine that smashed Michael Gregory's hand and ruined his life.
>
> *     *     *
>
> The evidence will show that between 1964 and that fateful date in 1986 when Michael lost much of his hands [sic] that Cincinnati learned time and time again that this unguarded foot pedal and that the unguarded point of operation was smashing worker's [sic] fingers and hands but it did nothing, it stood back and denied its duty to guard the direct path which it had created.

Throughout the trial, plaintiff introduced testimony and evidence to substantiate the claim that defendants became aware of the danger after the machine was designed, but took no affirmative steps to alter the physical characteristics of the machine to eliminate the danger.[2]

_____

[2] We distinguish the use of the evidence for the purpose of showing that defendant knew of the defect and did not *repair* the machine from the use of the evidence to establish that defendants failed to

At one point in the trial, plaintiff moved for admission of photographs of similar presses containing guards on the foot pedals. Defendants questioned the witness who took the pictures to determine whether the pictures depicted presses that had been manufactured before 1964 and to determine whether the guards on the foot pedals were added by the consumers. When the witness was unable to answer, and in fact admitted that it was likely that the consumers added the guards, defendants objected to the admission of the photos as not relevant. The court, without explanation, admitted the photographs over defendants' objection.

Thereafter, plaintiff's expert testified regarding the continuing-duty theory, stating:

> In my opinion if Cincinnati had not discovered the hazard and risk of injury in 1964, and thus didn't provide any point of operation protection and then discovered that hazard and risk at some later time, in my opinion they had a duty to correct that defect in the machine.

During closing argument, plaintiff's counsel further elaborated on the theory and inferred that defendants had a duty to correct the defect because post-1964 government regulations required guards on more modern presses.

In support of his argument that defendants had a continuing duty to cure a latent defect, plaintiff relies on our Supreme Court's decision in *Comstock, supra* at 163. In that case, our Supreme

---

adequately *warn* of a latent defect in existence at the time the machine was designed. The distinction is subtle, but important. While it is true that Michigan courts have placed a duty upon a manufacturer to *warn* consumers of a latent defect, *Comstock, supra* at 163, no Michigan cases extend that duty to take affirmative acts to *repair* a latent defect that may have existed in the product at the time it was manufactured.

Court reversed the trial court's decision to grant a directed verdict to General Motors in a products liability action. GM manufactured Buick automobiles that had defective brakes. GM apparently sent notices to all the Buick agencies apprising them of the defect and asking the agencies to make repairs of the automobiles at GM's expense. *Id.* at 170. GM did not send any notices of the defect to the purchasers of the automobiles. *Id.* at 171. The plaintiff, a mechanic at a Buick agency, was injured when a coemployee forgot about the defective brakes and drove one of the cars into the plaintiff.

Our Supreme Court stated that the ultimate manufacturer is liable for the negligent manufacture or inspection of an automobile even if the defect is attributable to a component-part manufacturer. *Id.* at 174. The Court also recognized the well-settled duty of a manufacturer to *warn* a purchaser of a known danger inherent in the product. *Id.* at 176. The Court expanded this duty to warn when it stated:

> If such a duty to warn of a known danger exists at point of sale, we believe a like duty to give *prompt warning* exists when a latent defect which makes the product hazardous to life becomes known to the manufacturer shortly after the product has been put on the market. [*Id.* at 177-178; Emphasis added.]

On this basis, our Supreme Court reversed the trial court's decision granting GM's motion for a directed verdict.

We believe that plaintiff's reliance on *Comstock* in support of his continuing-duty theory is misplaced. Nowhere in *Comstock* did our Supreme Court impose a duty upon a manufacturer to *repair* a latent defect in a finished product.

Rather, the Court merely stated that a manufacturer has a duty to *warn* the purchaser of a latent defect.[3] To assert that *Comstock* stands for the proposition that a manufacturer has a duty to repair a latent defect is, in our opinion, an overstatement of the holding.

In view of the foregoing, we conclude that the trial court's treatment of the evidence of a defect discovered after the design and manufacture of a product, admitted for the purpose of establishing a duty on behalf of the manufacturer to rectify a latent defect, constituted error. Moreover, the court's response to defendants' motion for a directed verdict in regard to the continuing-duty theory was not responsive to the concern raised by the motion. Defendants moved for a directed verdict arguing that the theory of continuing duty was not a *legally* sufficient ground for imposition of liability. Thus, when the trial court responded by concluding that there was sufficient evidence presented to allow the jury to conclude that defendants breached that duty, the court was overlooking the possibility that the theory was not one recognized in law, regardless of the amount of evidentiary support that may have existed on the record.

Having concluded that it was error to admit the evidence of continuing duty and to place the issue before the jury, we must now determine whether the error can be considered harmless. We conclude that it was not.

Defendants argue that the trial court errone-

[3] In relation to this issue, defendants introduced evidence to show that Cincinnati had done numerous mailings to plaintiff's employer acknowledging that a danger existed and proposing a system to guard the machine. Plaintiff has not argued, nor has he presented evidence, that the information disseminated to plaintiff's employer somehow fell below the standard of care in notifying the employer. See *Antcliff, supra* at 638.

ously admitted certain evidence and further erroneously instructed the jury with regard to the duty imposed upon them by law. In reviewing a claim that error warranting reversal occurred from the admission of evidence, a party must show that a substantial right was somehow prejudiced by admission of the evidence. *Williams v Coleman,* 194 Mich App 606, 621; 488 NW2d 464 (1992). It is true that a trial court has the discretion to give supplemental instructions as long as they accurately state the law and theories of the parties. *Mull v Equitable Life Assurance Society of the United States,* 196 Mich App 411, 422-423; 493 NW2d 447 (1992), lv gtd on other grounds 442 Mich 926 (1993). However, where the use of a supplemental jury instruction is erroneous, reversal is mandated if failure to do so would be inconsistent with substantial justice. *Id.*

We believe that the combination of the admission of evidence, the statements of plaintiff's counsel during opening and closing argument, and the supplemental instruction regarding the continuing-duty theory constituted error that, when not rectified, was inconsistent with substantial justice. The effect of injecting the continuing-duty theory into this trial was to expand the scope of the defendants' liability beyond that recognized in this state. Even though there may have been sufficient evidence on the record to conclude that defendants may have known of the hazard before manufacturing and marketing the product, we cannot ascertain whether the jury imposed liability on that basis. We believe that there is a substantial possibility that the jury found defendants liable on the basis of their failure to take affirmative steps to alleviate the risk of injury after the machine had been sold, notwithstanding the possibility that the product may not have been "defective" when the

machine was designed and sold according to those standards extant in 1964.

While it is true that the manufacturer may have a duty to warn the user of dangers associated with the intended or foreseeable misuse of their products, *Glittenberg, supra* at 386-388, the court did not confine the jury's consideration of the evidence related to accidents that occurred and regulations that were adopted after the sale of the press to the claim that barred liability on the failure to warn of the existence of the danger. Rather, the court allowed plaintiff's counsel to lead the jury to believe that defendants had a duty to alter the press so as to comply with safety standards and measures adopted after the design, manufacturer, and sale of the press by taking affirmative steps to place guards on the press. That overstates a manufacturer's duty insofar as it relates to defects that become apparent after the product has been designed and placed into the market for an extended period of time.

With respect to the liability of Addy-Morand, we similarly believe that the error denied it a fair trial. In *Reeves v Cincinnati, Inc,* 176 Mich App 181, 190; 439 NW2d 326 (1989), this Court, relying on *Prentis, supra* at 693, stated:

> To the extent that liability against Addy-Morand, the alleged seller of the press, is premised upon a breach of warranty resulting from a defective design attributable to Cincinnati, our holding reversing the directed verdict and remanding for trial is applicable to Addy-Morand as well as Cincinnati.

In *Reeves,* this Court concluded that it was improper for the trial court to grant Cincinnati's motion for a directed verdict where the plaintiff presented sufficient evidence of a design defect to

raise a question of fact regarding the reasonableness of Cincinnati's design decision. *Id.* at 189. This Court further concluded that Addy-Morand's liability for breach of warranty was premised on the design defect and that it should be subjected to trial as well.

In this case, our review of the record reveals that there was absolutely no independent evidence of negligence or failure to warn as far as Addy-Morand's actions were concerned. Rather, plaintiff confined his proofs to the design decision made by Cincinnati and Addy-Morand's exposure to liability for marketing a defective machine under the breach-of-warranty theory. A products liability suit based upon a theory of breach of implied warranty still requires proof of a defect in manufacturing or design. *Elsasser v American Motors Corp,* 81 Mich App 379, 384; 265 NW2d 339 (1978). Insofar as we have concluded that the determination whether this press was defective was tainted by the inclusion of the continuing-duty theory, any liability imposed upon Addy-Morand for breach of warranty is similarly tainted. Because there was no other evidence of negligence or breach of warranty as far as Addy-Morand is concerned, we reverse the verdict as it pertains to Addy-Morand as well.

The verdict in favor of plaintiff is reversed and the cause is remanded for retrial. At retrial, the court shall confine the jury's consideration of evidence and theories to those recognized by Michigan law. The court shall not permit the introduction of any evidence of accidents that occurred after the design, manufacturer, and sale of the press or any other evidence for the purpose of proving a continuing duty by defendants to correct whatever defect is alleged to exist. However, the court may allow plaintiff to admit evidence of and testimony regarding accidents that occurred after

the sale to show that defendants had notice that the product had a latent defect, but failed to *warn* consistent with the standards developed under law.

Reversed and remanded for a new trial.

SAWYER, J., concurred.

MURPHY, J. *(dissenting).* I would affirm the judgment of the trial court. The majority concludes that the trial court erred in improperly instructing the jury concerning plaintiff's theory that defendant Cincinnati, Inc., had a continuing duty to modify a product following its production and sale and by permitting the jury to consider evidence presented concerning this theory. I believe that the trial court accurately instructed the jury with respect to defendant's duty and appropriately left to the jury the determination of what actions of defendant would have been reasonable under the circumstances. I therefore dissent.

Plaintiff was injured when the brake press he was operating accidentally activated, smashing his hand. The brake press was operated by a foot pedal, which plaintiff mistakenly depressed while his hand was in the path of the moving parts of the press. Plaintiff brought this action against defendants, alleging that the machine was defectively designed because there was no guard surrounding the point of operation of the machine and no guard to prevent accidental operation of the foot pedal. Plaintiff's theory at trial was that this defect was present at the time the press was sold to plaintiff's employer in 1964 and that because defendants later discovered the dangerous condition, they had a duty to use reasonable care, which under the circumstances included notifying plaintiff's employer of the defect and correcting the defect.

Defendants' argument on appeal, and the basis
for the majority's opinion, is that in Michigan
there is no recognized duty of a manufacturer to
modify a defective product after sale to bring the
product current with state-of-the-art safety fea-
tures. While I would agree that there is no such
hard and fast rule, I believe that defendants were
obligated to use reasonable care under the circum-
stances and that whether reasonable care in this
case rose to the level of taking affirmative steps to
repair the defect was a question for the jury.

Generally, negligence is the failure of a person
to do something that a reasonably careful person
would do or the failure to refrain from doing
something that a reasonably careful person would
not do under the circumstances. What a reason-
ably careful person would do under the circum-
stances of a given case is a question for the jury.
See SJI2d 10.02. While the standard of conduct
required may vary, the degree of care does not; it
is always what a reasonably careful person would
do or refrain from doing under those circum-
stances. See *Laney v Consumers Power Co,* 418
Mich 180; 341 NW2d 106 (1983); *Frederick v De-
troit,* 370 Mich 425, 432; 121 NW2d 918 (1963).

A manufacturer's duty has been determined to
include the duty to warn a purchaser about dan-
gers associated with the intended use of the prod-
uct, as well as dangers that may occur from fore-
seeable misuse of the product. *Bullock v Gulf &
Western Mfg,* 128 Mich App 316, 322; 340 NW2d
294 (1983). A manufacturer is obligated *at least* to
warn of latent defects of which it becomes aware,
even though the defective product has already
been placed into the stream of commerce. *Com-
stock v General Motors Corp,* 358 Mich 163, 177-
178; 99 NW2d 627 (1959). A manufacturer's duty
also includes, however, the duty to " 'exercise a

reasonable precaution for the protection of others commensurate with the peril involved.' " *Id.,* 177, quoting from *Gerkin v Brown & Sehler Co,* 177 Mich 45; 143 NW 48 (1913). Moreover, any person, including a manufacturer, has the duty to use ordinary care. See SJI2d 10.05. Ordinary care is the care that a reasonably careful person would exercise under the circumstances of a given case, and this question is one of fact for the jury to decide. SJI2d 10.03.

In this case, the majority notes that throughout the trial plaintiff introduced evidence that defendant Cincinnati, Inc., had notice of the danger of the machine, but took no steps to correct the machine. The majority points to the following statement made during plaintiff's opening statement:

> Their case boils down to a sacred issue, and the plaintiffs [sic] expect the evidence to show that the defendant Cincinnati Machine had a duty to fix the machine that smashed Michael Gregory's hand and ruined his life.
>
> \*  \*  \*
>
> The evidence will show that between 1964 and that fateful date in 1986 when Michael lost much of his hands [sic] that Cincinnati learned time and again that this unguarded foot pedal and that the unguarded point of operation was smashing worker's [sic] fingers and hands but it did nothing, it stood back and denied its duty to guard the direct path which it had created.

There is no indication that this statement made by plaintiff or the evidence introduced by plaintiff compelled the jury to conclude that defendant had a duty to bring the machine up to state-of-the-art safety standards. Rather, the statements and the evidence relate to plaintiff's theory that defendant,

after discovering that the machine's design was dangerous and therefore defective at the time it was manufactured, had the obligation to take whatever steps were reasonable under the circumstances and to exercise ordinary care. What constitutes reasonable care or the exercise of ordinary care under the circumstances of this case, and whether defendant acted with reasonable care or ordinary care under the circumstances of this case, are questions for the jury. A finder of fact should be permitted to determine that a manufacturer who unknowingly designs or manufactures a defective product but who later becomes aware because of developing technology or otherwise that the product as originally designed or manufactured was defective, is liable if the peril of serious injury is so great that reasonable care would require corrective measures to alleviate the risk. The arguments and instruction to the jury in this regard were therefore properly submitted to the jury for determination.

I would affirm.